NANNIE D. MASTERMAN v. B. F. MASTERMAN.
No. 10303.

1. FOREIGN JUDGMENT IN DIVORCE—*denying petition because plaintiff a non-resident, and also on merits, no bar to subsequent action here for same cause.* A judgment, to constitute a bar to a subsequent action, must be rendered by a court having jurisdiction both of the subject-matter and the parties. Where the plaintiff brought suit in another state to obtain a divorce, and the court there found that he was not a resident in good faith of that state, but further found and adjudged, on the testimony adduced, that he had no cause of action and that the averments of his complaint were not true, *held*, that the judgment of the court on the merits of the case was rendered without jurisdiction, and is not a bar to a subsequent action in this State, of which he was a resident, for the same cause as that set up in the former case.

2. EXTREME CRUELTY—*words, to constitute, must be unjustifiable and for purpose of causing pain.* In order to support a charge of extreme cruelty in an action for divorce, where words alone are relied on as constituting the cruelty inflicted, it must appear that the words were uttered without justifiable cause, and for the purpose of inflicting pain. When they are uttered merely as a complaint against the apparent misconduct of the other, or as the result of natural feelings excited by his misconduct, they are insufficient to constitute cruelty within the meaning of the section of the statute authorizing a divorce for that cause.

Error from Montgomery District Court.   Hon. J. D. McCue, Judge.   Opinion filed December 11, 1897. *Reversed.*

*Joseph Chandler,* for plaintiff in error.

*McCue & McKinstry,* and *T. H. Stanford,* for defendant in error.

ALLEN, J.   B. F. Masterman commenced this action against his wife, in the District Court of Montgomery County, to obtain a divorce. The ground alleged in the amended petition is extreme cruelty, and the specifications are that, about the first of December, 1888, and at divers times thereafter, the defendant charged the plaintiff with unchastity, and with maintaining unlawful sexual relations with various women, and especially with Mrs. Ben M. Armstrong; that, while pretending to believe the false charge, and knowing it to be false, she left the bed of the plaintiff; and that she, at various times and places, accused the plaintiff of unchastity and of adultery with Mrs. Armstrong and other persons, to various persons named in the petition, as well as others unknown to plaintiff; and that, by such conduct, the plaintiff had been greatly humiliated and disgraced, his peace of mind destroyed, his health impaired, and the ends of matrimony defeated. The answer of the defendant was, *first,* a general denial; *second,* a plea in bar, that on the sixth of January, 1893, in an action instituted by the plaintiff in the District Court of Latah County, Idaho, for the purpose of obtaining a divorce from the defendant upon the identical grounds stated in the petition herein, it had been determined by that court that the plaintiff was not entitled to a divorce, and a judgment was thereupon rendered in favor of the defendant. A

copy of the complaint, findings and judgment was attached to the answer. To this answer plaintiff replied with a general denial.

When the case came on for trial the defendant demanded a jury, which was refused. This is the first allegation of error. The claim is not tenable, however. The defendant was not entitled to a jury as a matter of right. *Carpenter v. Carpenter*, 30 Kan. 712.

The second specification of error is in the admission and rejection of evidence. The testimony took a much wider range than that covered by the charges in the petition. But as an action of divorce is determined by the court alone, great latitude is usually allowed in order to give the court a clear understanding of the conduct and motives of the parties. The cases are rare in which a judgment of this kind would be reversed merely because too wide a range of testimony was permitted, bearing even remotely on the charge relied on as a ground for divorce.

It is insisted that the judgment of the Idaho court, which was introduced in evidence, was a bar to this

1. Foreign judgment no bar to future action, when.

action. The allegations of the plaintiff's pleading in that court, styled there a complaint, were substantially the same as those contained in the petition in this action. The Idaho court found specially that, at the time of filing the complaint in that court, the plaintiff was not a *bona fide* resident of the State of Idaho. It further found that the plaintiff had failed to establish cruel treatment by the defendant, and that the allegations of his complaint in that respect were not true, and rendered a judgment in favor of the defendant for costs. No argument on this proposition is made in the brief for plaintiff in error, and the case of *Bierer v. Fretz* (37 Kan. 27), alone, is cited as authority in support of this contention. It is universally held that

residence in good faith of the state in which the action is brought, by the plaintiff at least, is essential to the jurisdiction of the court to grant a divorce. *Litowich v. Litowich*, 19 Kan. 451 ; *Thorne v. Salmonson*, 37 id. 441 ; Herman on Estoppel and Res Judicata, 333. The Idaho court, at the trial there, determined that the plaintiff was not a *bona fide* resident of that State. He therefore had no right to invoke the jurisdiction of its court to determine the question of his personal status in an action for divorce. Following this finding, if a judgment had been rendered granting him a divorce it would have been a nullity. It seems to follow as a logical and inevitable conclusion that, if the court was without jurisdiction to determine the controversy in his favor, it was also without jurisdiction to adjudge the merits of the case against him. A trial by a court implies the power to settle and determine the controversy in favor of either party, as the facts may warrant. This, the Idaho court had no power to do. Notwithstanding the fact that the plaintiff had invoked its jurisdiction, had asserted its right to proceed, and had, so far as he could, submitted his claims there for determination, the judgment does not constitute a bar or estoppel in this action. We are not cited to any case deciding this identical proposition, nor have we been able to find any. But we think there can be no escape from this conclusion under the well-recognized principles governing the question. *Gordon v. Kennedy*, 36 Iowa, 167 ; *Gray v. Hodge*, 50 Ga. 262.

The final and principal question in the case is whether there is sufficient evidence to support the judgment. We enter on the consideration of this question with no disposition to disregard or impair the well-settled rule that the decision of the trial court as to all controverted questions of fact is conclusive here.

The only question we are required or permitted to pass on is, whether the testimony offered by the plaintiff, viewed in the light of other undisputed facts disclosed in the record, is sufficient to establish the charge of extreme cruelty against the wife. It will be observed that the specific charge in the petition is that the defendant repeatedly accused her husband of illicit intercourse with other women; that this charge was not only made to him privately, but to many other women with whom she associated. In determining the truth or falsity of the plaintiff's complaint, much testimony with reference to the wife's conduct in other particulars must be disregarded. Without undertaking to recite in detail the statements of the plaintiff, who was the principal, if not the only, witness who gave any testimony tending to support his charge, the substance of his statements is as follows: The parties were married on June 30, 1872, and have lived at Independence ever since. They have had five children, two of whom are dead. The first was born in 1873, and the last in 1889. Sometime about December, 1888, the plaintiff, who was a physician, began to attend Mr. Armstrong, who had a pulmonary disease, from which he died in March following. Just before he died, his daughter Fannie was taken sick with scarlet fever. Her illness continued for six weeks afterwards. The plaintiff attended her, going sometimes twice and sometimes three times a day. The plaintiff says:

"About that time was the time my wife commenced making these charges. I had said nothing to her about the scarlet fever. That was kept quiet. The neighbors talked a good deal about my going there, as I learned afterward. In the meantime, before she got up, Colonel Bristol [Mrs. Armstrong's father] got his leg broken, and I treated him. Immediately following that, Mrs. Armstrong was suffering from a very per-

*Margin note:* 2. What words constitute cruelty.

sistent and severe cough, and I treated her for that; after that, Mrs. Bristol was taken sick with nervous prostration and  .  . . .  with which she had suffered before, with which she laid sick for six weeks longer. During all this time, I was at one or both of the houses whenever it was necessary, as a physician, and only as a physician.''

The attendance of the plaintiff on members of these families continued from December, 1888, until about September or October, 1891.   In December, 1888, the parties commenced occupying separate rooms.   The plaintiff says that his wife said she was not going to sleep with him any more, and that he said that was satisfactory to him if it was to her; that she then put a bed in the parlor for herself, and that he slept with the children in an adjoining room.   The defendant, at that time, was pregnant with a child, born the following February.   The parties continued to live in the same house, occupying different rooms, until about the fifteenth of May, when the plaintiff quit sleeping at his house.   It will be observed that the cruel treatment is charged to have been inflicted during the period commencing in December, 1888, and that this is the same period during which he was in constant attendance on some member of Mrs. Armstrong's family.   One circumstance detailed in the evidence of the plaintiff occurred in July, 1892.   The plaintiff was then treating Mrs. Armstrong for an injury of the spine   It was his custom to go every evening and administer a treatment by electricity.   On his way there the defendant met him, and, he alleges, said in a loud voice,—'' You had better be at home taking care of your family than running after whores and prostitutes ;'' and continued to use abusive language as long as he remained within hearing.   Her sister, Mrs. Heady, was with her in a buggy at the time.   She was called as a witness by

48—58 KAN.

the plaintiff, and her testimony as to what was said
at the time is that Mrs. Masterman said,— "Good
evening, doctor : it is pretty late in the evening for
you to be going up the avenue ;" that when they got
to the gate she said,— "Doc, I want you, if not for
your own sake, for the children's sake, to keep away
from that vile woman ;" and that these were the only
remarks the defendant made.

Several of the ladies named in the petition as per-
sons to whom defendant had charged her husband
with infidelity were called by the plaintiff and inter-
rogated in that particular.   Some of them answered
that Mrs. Masterman had never made any such state-
ments to them or in their hearing.   Neither of them,
except Mrs. Heady, her sister, remembered her ever
having made a statement with reference to the matter.
It is apparent from the testimony that the constant
visits of the plaintiff at the Armstrong house became
a matter of comment among the neighbors, and were
regarded by them as of questionable propriety, if not
indicative of criminal conduct.   The court found that
the plaintiff was not guilty of any improper intimacy
with Mrs Armstrong, or any other person.   This
finding accords with the testimony, and must be ac-
cepted as conclusive on this point.   This, however,
does not determine the question whether, in complain-
ing of her husband's conduct, the defendant was cruel,
or was merely expressing in a natural way the feelings
of a wife, engendered by conduct calculated to arouse
her jealousy.   It is perfectly clear from all the testi-
mony in the record, and is even stated by the plaintiff
in his direct testimony, that his frequent visits at the
Armstrong residence attracted attention and occasioned
gossip.   Under the circumstances, it may be conceded
that it was the duty of the wife to resolve all doubts
in favor of the honor of her husband.   But he also

had duties with reference to the preservation of his own good name, and the removal of all grounds for suspicion of his conduct from the public generally, and especially from the mind of his wife. His testimony shows that, when she inquired of him with reference to where he had been, his answer was merely — "Attending to business." He concedes that he concealed from his wife that Mrs. Armstrong's daughter had scarlet fever and that he was attending her after Mr. Armstrong's death. He now claims that there was ample cause for his frequent visits at the time, but he neglected to disclose that cause to his wife. As the case stood before her, he had been attending a man on his death bed. He continued to visit every day, and usually several times a day, at the house of the widow, without any explanation to his wife as to the occasion of his doing so. Inferences from the conduct of a person are to be drawn from what appears and is made known ; and while this sometimes leads to unjust censure, in general it is fair to judge people's motives from what is discernible with reference to their conduct and surroundings. It is not altogether unfair to assume that nothing will be concealed, especially by a husband from his wife, that would tend to justify his conduct if made known. Generally speaking, concealment is of that which tends to criminate or defame. Every one is fully aware that the happiness of the domestic circle, the preservation of the concord and confidence that should exist between husband and wife, depends largely, if not absolutely, on the maintenance of mutual confidence of the parties in the chastity and fidelity of each other. Whenever one has well-grounded suspicions that the other is bestowing his attentions elsewhere, that he finds more congenial society with another than with his wife, the seeds of discord are sown, and the rancorous

weeds of jealousy and distrust are sure to grow, and overshadow and wither the flowers of domestic felicity. It is from the home circle that each generation imbibes its inspiration to virtue and morality. The moral progress of the race, the purity of society, depends absolutely on home influences and surroundings. Would any one condemn a husband for insisting that his wife should be, not merely free from all adulterous intercourse with others, but also free from all such conduct as incites suspicion of wrongdoing? If this may lawfully be exacted by the husband, are laxer rules to be applied with reference to his conduct? May he persist in conduct which occasions his neighbors, associates and friends to comment on his acts as indicative of an adulterous connection, and because his wife protests against it, obtain a decree of court dissolving the marriage relation, on the ground that this is cruelty towards him? Shall the wife be censured because the pangs of jealousy, excited by the husband's conduct, force from her violent though natural expressions of injured feeling, in his presence? Her conduct is to be viewed, and approved or censured, according to the state of circumstances as they were presented or made known to her. She is presumed to have the feelings of a woman, and to act in accordance with the natural instincts and promptings of her sex. The words she may use in expostulating with her husband, when highly excited by strong grounds of suspicion of his incontinency, are not to be nicely weighed against her, when defending against a charge of cruelty made by him. Whatever results from her own wounded feelings is to be attributed to the provocation, rather than to a malicious purpose to be cruel to him. That in an action for divorce the provocation to any act is to be considered, and may furnish ample justification for acts which otherwise

would furnish sufficient grounds for divorce, is abundantly supported by authority. *Johnson v. Johnson*, 14 Cal. 459; *Skinner v. Skinner*, 5 Wis. 449; *Knight v. Knight*, 31 Iowa, 451; *Reed v. Reed*, 4 Nev. 395; *Taylor v. Taylor*, 28 N. J. E. 207. In *Pierce v. Pierce* (3 Pick. 299; s. c. 15 Am. Dec. 210), the rule was carried so far as to defeat an action for adultery committed by the wife with the connivance of the husband.

We adhere to the doctrine that words may be as cruel as blows; yet it does not follow that every use of words which inflict pain is cruel. If it were so, matrimonial bonds would have but little strength in the eye of the law. For how many married pairs are able to live together for a considerable period without, at some time or other, by word, grievously wounding the feelings of each other? In the home, love must be the law, and mutual concessions remove all occasions for controversy. The interference of courts can never be invoked beneficially to settle differences in the family. It comes only as a last resort, to separate those who fail or refuse to make home what it should be. We are unable to say that the testimony contained in the record shows that the defendant in this action was guilty of cruelty. It may be true, it doubtless is true, that her conduct is not altogether justifiable; but the same may be as truly said of that of the plaintiff. The evidence introduced on behalf of the defendant shows that the plaintiff persistently sought a divorce from his wife; that through mutual friends he asked that she institute an action against him, and promised to interpose no defense, even though she charged him with adultery. He brought an action in the Idaho court, falsely claiming to be a resident of that State. When defeated there, he returned to his home and, after the lapse of little more than a year, commenced this ac-

tion. It is not for us, however, to weigh conflicting testimony. We hold that that most favorable to the plaintiff, when considered in connection with other undisputed facts disclosed in the case, does not warrant the condemnation of the defendant as guilty of extreme cruelty towards her husband, nor furnish ground for a divorce. The judgment will be reversed, and the case remanded for a new trial.