(December 27, 1905.)

## STONEBURNER v. STONEBURNER.

[83 Pac. 938.]

DIVORCE—DESERTION—RECRIMINATION—RECONCILIATION.

1. Divorce is a remedy for the innocent and will not be granted to one who is shown to be guilty of a similar offense against the marital contract as that of which he or she complains.

2. The defense or recrimination in divorce suits is recognized and adopted by sections 2464 and 2466 of the Revised Statutes, and constitutes a complete bar to a recovery where the defendant shows a valid existing cause of action against the plaintiff.

3. As to whether or not a husband can, while himself a deserter of his wife, change the domicile to a foreign jurisdiction, and after causing the wife to go to such jurisdiction, in defending an action prosecuted by him, and there solicit her to come and live with him in the new home and thereby convert her into a deserter of her husband, considered.

4. In cases of desertion the offending party may at any time return and offer reconciliation, and the injured spouse cannot reject such offer if made prior to the expiration of the one year period during which time the desertion ripens into a cause of action, but if made after the right of action has accrued, the injured spouse may reject such offer without thereby assuming the attitude of an offender against the marital contract.

5. Evidence examined and considered and held insufficient to warrant a decree of divorce in favor of the plaintiff.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, in and for Nez Perce County. Honorable Edgar C. Steele, Judge.

Action by plaintiff for a decree of divorce on the grounds of desertion. Denials and defense of recrimination on grounds of desertion. Judgment for plaintiff and defendant appeals. Reversed.

The facts are stated in the opinion.

Eugene O'Neill, for Appellant.

A court should dismiss a case when such evidence is given on the ground that it will not aid a wrongdoer, and if it appears that both are in fault, it will leave them where it finds them, is elementary law. (2 Bishop on Marriage and Divorce, sec. 87; *Conant v. Conant,* 10 Cal. 249, 70 Am. Dec. 717; Rev. Stats., sec. 4354, subds. 4, 5; *Church v. Church,* 16 R. I. 668, 19 Atl. 244, 7 L. R. A. 385; *Day v. Day* (Kan.), 80 Pac. 975; *Redington v. Redington,* 2 Colo. App. 8, 29 Pac. 811.) For the rule in England, when the plaintiff in his evidence shows misconduct, see *Timmings v. Timmings,* 3 Hagg. Ecc. 76, 5 Eng. Ecc. Rep. 22, cited in *Redington v. Redington,* 2 Colo. App. 131, 29 Pac. 812; *Hoff v. Hoff,* 48 Mich. 281, 12 N. W. 160; *Pease v. Pease,* 72 Wis. 139, 39 N. W. 133, 134; *Hubbard v. Hubbard,* 74 Wis. 650, 43 N. W. 655, 6 L. R. A. 58; *Otway v. Otway,* L. R. 13 Prob. Div. 141; *Clapp v. Clapp,* 97 Mass. 531; *Handy v. Handy,* 124 Mass. 394; *Wheeler v. Wheeler,* 18 Or. 261, 24 Pac. 900; *Hale v. Hale,* 47 Tex. 336, 26 Am. Dec. 294; *Mattox v. Mattox,* 2 Ohio, 233, 15 Am. Dec. 547; *Nagle v. Nagel,* 12 Mo. 53; *Morrison v. Morrison,* 62 Mo. App. 299; *Fisher v. Fisher,* 93 Md. 298, 48 Atl. 833; *Tracey v. Tracey* (N. J.), 43 Atl. 713; 2 Kent's Commentaries, 100; 14 Cyc. 648, and authorities there cited; *Tracey v. Tracey* (N. J.), 43 Atl. 713, 715. Moreover, it affirmatively appears from the evidence that the time the plaintiff pretends to have asked defendant to live with him as his wife he had both deserted and abandoned without cause and had failed to provide for her for more than the statutory time and she was not obliged or required under the law to return to and live with plaintiff no matter what the invitation extended to her. This is the law on that proposition. If it were not, all right under the divorce statute could be ended by asking the injured party to live with or condone the offense of the wrongdoer. The request comes too late when the offender's wrongdoing has ripened into a cause for a divorce against him. (*Benkert v. Benkert,* 32 Cal. 469, 472;

*Coe v. Coe* (N. J., Feb. 1905), 59 Atl. 1059.)   The decision of the court is against law, as not all the issues raised by the pleadings are passed upon or found by the court.   This is ground for the reversal of the judgment.   (*Cassidy v. Cassidy,* 63 Cal. 352; *Roeding v. Perasso,* 62 Cal. 515; *Dunn v. Dunn,* 62 Cal. 176-178; *Lang v. Specht,* 62 Cal. 145; *Knight v. Roche,* 56 Cal. 15, 17, 18; *Soto v. Irvine,* 60 Cal. 436-438; *Brown v. Burbank,* 59 Cal. 535-538; *First Nat. Bank v. Williams,* 2 Idaho, 670-675, 23 Pac. 552; Hayne on New Trial and Appeal, pp. 280, 281, secs. 99, 239, 240.) Neither language unbecoming or acts that might be considered indecorous, count for anything on a proposition of cruelty.   It must be alleged, and the acts must be both alleged and proven to have been such as to affect the health or to cause great mental suffering.   (*Morris v. Morris,* 14 Cal. 76, 73 Am. Dec. 615.)   Also holding that the plaintiff's conduct must be free from blame.   (*Powelson v. Powelson,* 22 Cal. 359; *Waldron v. Waldron,* 85 Cal. 251, 24 Pac. 649, 858, 9 L. R. A. 487; *Smith v. Smith,* 124 Cal. 651, 57 Pac. 573.   See also, as to abusive or improper language, *Lockwood v. Lockwood,* 43 Mich. 230, 5 N. W. 96; *Johnson v. Johnson,* 49 Mich. 639, 14 N. W. 670; *Gleason v. Gleason,* 16 Neb. 15, 19 N. W. 784; *Schoessow v. Schoessow,* 83 Wis. 553, 53 N. W. 856.)

George W. Tannahill, for Respondent.

Recrimination cannot be pleaded as a defense unless the desertion alleged in the complaint is admitted by the answer.   (*Eggerth v. Eggerth,* 15 Or. 626, 16 Pac. 650; *Hoffman v. Hoffman,* 43 Mo. 547; *Warner v. Warner,* 54 Mich. 492, 20 N. W. 557, and cases cited.   *Doolittle v. Doolittle,* 78 Iowa, 691, 43 N. W. 616, 6 L. R. A. 187; *Dennison v. Dennison,* 4 Wash. 705, 30 Pac. 1100; *Reddington v. Reddington,* 2 Colo. App. 8, 29 Pac. 811; *Hoff v. Hoff,* 48 Mich. 281, 12 N. W. 160.)   The defendant was responsible for the separation and cannot complain.   (*Hardin v. Hardin,* 17 Ala. 250, 52 Am. Dec. 170; *Schichtl v. Schichtl,* 88 Iowa, 210, 55 N. W. 309; *Day v. Day,* 84 Iowa, 221, 50 N. W. 979;

*Doolittle v. Doolittle,* 78 Iowa, 691, 43 N. W. 616, 6 L. R. A. 187; *Lea v. Lea,* 99 Mass. 493, 96 Am. Dec. 772, and note; *Stocking v. Stocking,* 76 Minn. 292, 79 N. W. 172; *Neff v. Neff,* 20 Mo. App. 182; *Kikel v. Kikel,* 25 Neb. 256, 41 N. W. 180.) The absence of findings of fact from the roll does not establish that error was committed. Under the rule referred to, we cannot presume that the findings were not waived; the necessary intendment in support of the judgment is the other way. We cite further: *Roby v. Roby,* 10 Idaho, 139, 77 Pac. 215; *Gwin v. Gwin,* 5 Idaho, 271, 48 Pac. 295; *Gamble v. Dunwell,* 1 Idaho, 268; *Hazard v. Cole,* 1 Idaho, 276; *Broadbent* v. *Brumback,* 2 Idaho, 366, 16 Pac. 555; *McGuire v. Lamb,* 2 Idaho, 378, 17 Pac. 749. The court found, in the case at bar, that all the material allegations in the complaint are supported by the Revised Statutes of Idaho of 1887, sections 4420, 4421. If the evidence is conflicting and the findings are approved by the trial court they will not be disturbed on appeal. (*Creedon v. Patrick,* 3 Neb. (unofficial) 459, 91 N. W. 872; *Rector etc. Mt. Calvary Church v. Albers,* 174 Mo. 331, 73 S. W. 508.)

AILSHIE, J.—This action was instituted by the respondent in the district court February 16, 1903, praying for a decree of divorce. The defendant, who is appellant in this court, answered denying the charge of desertion and as a separate defense alleged and charged the plaintiff with a violation of the marital contract in that he, without just or any cause therefor, deserted and abandoned her on the eighth day of June, 1896, at Berne, in the state of Indiana. After the issues were made up the district court referred the case to a referee to take the testimony and report the same to the court. After the evidence was reported and the case was argued and submitted, the court made findings of fact and thereupon entered judgment in favor of the plaintiff and against the defendant. The trial court found upon all the material issues of the plaintiff's complaint, but failed to find on the issues raised by the separate defense interposed by the defendant, wherein the plaintiff was charged

with desertion. This failure to make findings on the issues presented by defendant's separate defense which was pleaded under sections 2464 and 2466 of the Revised Statutes, if true, would have constituted a complete defense to the plaintiff's cause of action and is one of the errors assigned on this appeal. It was clearly the duty of the court to make findings on this issue the same as on the issue presented by the plaintiff's complaint. Section 2464, *supra,* provides that "divorces must be denied upon showing . . . . recrimination." Section 2466, *supra,* provides that "Recrimination is a showing by the defendant of any cause of divorce against the plaintiff, in bar of the plaintiff's cause of divorce." The general finding, therefore, "that all the material allegations and denials of defendant's answer in conflict with the foregoing findings are found to be unsupported by the evidence and untrue," is not a sufficiently specific finding upon the issues raised by a recriminatory defense. The appellant places her chief contention, however, in this court, upon the fact that the evidence was insufficient to support findings and a decree in favor of the plaintiff and that the uncontradicted evidence in the case supports the allegations of appellant's separate defense. In this case no witnesses were produced in the district court and the district judge did not see or hear any of the witnesses testify in the case. In this condition of the case, under the rule heretofore established in this court, it becomes our duty where the question of sufficiency of the evidence is raised, to make an original examination of the entire evidence in the case and determine the weight and preponderance thereof the same as if the case had never before been heard. (*Roby v. Roby,* 10 Idaho, 139, 77 Pac. 215.) The plaintiff and defendant intermarried in the state of Indiana on the second day of April, 1888. After a number of removals to different points in the state of Indiana, they went to Cincinnati, where the plaintiff attended a medical college, while his wife, the defendant, kept boarders to defray the expense of obtaining his medical education. After completing his medical course they located at Berne, Indiana, where the appellant engaged

in the practice of medicine. Their married life appears to have been fairly agreeable and happy until about the year 1896. On June 8th of that year, along toward midnight, the plaintiff, without notice or warning to his wife, left the home, boarded the train and disappeared. On June 18th of that year he wrote to her from Mound City, Kansas, discussing at considerable length his reasons for leaving her, and, among other things, said: "As this is the third attempt of my leaving, I am determined that this shall be the last. I will never live with you again. You say that you are going to follow me. This will do you no good, for I will not take up with you any more. This will be the third time and I will not attempt it, so you may just as well stay there and save the money and worry of the trip." Later he returned to Indiana, but did not go to his home nor return to his wife, and on August 1, 1896, he commenced an action in the circuit court of Adams county, Indiana, for a divorce upon the grounds of cruel and inhuman treatment inflicted by his spouse. The defendant answered the complaint denying its allegations and also charged the plaintiff with deserting and abandoning her on the eighth day of June previous. The appellant thereupon filed his affidavit for a change of venue from Adams county upon the grounds that he could not have a fair and impartial trial in that county, and thereupon the case was transferred to the Jay county circuit court. The case was thereafter tried and determined and judgment was entered in favor of the defendant and against the plaintiff. The plaintiff did not return to his wife or resume the marital relations with her, but thereafter came west and located at Leland, in Nez Perce county, Idaho, on about January 30, 1899. In the meanwhile his wife was living and residing at the old home at Berne, Indiana. On January 22, 1900, the plaintiff commenced an action against the defendant in the district court in and for Nez Perce county, charging against her the same acts of cruelty alleged in his complaint in the Indiana court in 1896. In response to the service of process in this latter case, the defendant came to Idaho and employed counsel and defended

against plaintiff's cause of action, and on October 14, 1901, a decree was entered denying the plaintiff any relief upon the ground that the matter was *res adjudicata,* having been previously passed upon by a court of competent jurisdiction in the state of Indiana. After the entry of this latter decree, the defendant remained at Lewiston, and she and the plaintiff soon thereafter began to confer with each other apparently with a view to a reconciliation and again living and residing together. Several notes were exchanged making engagements at which times and places they would confer with each other with reference to a settlement of their differences. Those notes were in evidence, and in them each professes a willingness to live with the other, but when we come to reading the testimony of the respective parties with reference to the conversations which took place between them at these meetings, we find an utter failure on their part to agree as to the character and import of their conversations and interviews or what was said at such times. The wife testifies that she requested her husband to go for a walk on one or two occasions in order that they might discuss matters, but it stands admitted by the plaintiff that he always refused and declined to have any conversation with her in reference to their differences at any time or place other than at his room in the hotel or at his attorney's office. At each of these conversations there seems to have been a witness near who was able to hear part of the conversation, especially what was said by the plaintiff. In one instance the witness admits that he was requested by the plaintiff to be at such place as he could overhear the conversation. The plaintiff testified that at these various conversations he requested the defendant to go with him to his home and place of residence at Leland, and to live with him, and that he promised to care and provide for her if she would do so, and that she would from time to time tell him that she did not know what she would do. It is admitted, however, that she did not go with him and has at no time lived or resided with him in Idaho. The witnesses who overheard the con-

versations all testified that the plaintiff requested his wife
to go with him to his home and resume the marital relations.
It is well enough to here observe that no witness claims to
have heard all that was said or much of anything that was
said by the defendant. The defendant testifies that at some
of these interviews the plaintiff insisted on her entering into
an agreement and arrangement with him whereby he should
have a divorce and that when she would decline to do so he
would become excited and abusive and on several occasions
shook his fist in her face. She also testifies that she told him
she would go with him and that he agreed to call for her
at her boarding place at a certain hour in the afternoon,
but that he never called. Things went along in this man-
ner until February 16, 1903, when the plaintiff commenced
this action in the district court of Nez Perce county, pray-
ing for a divorce on the grounds of desertion. The plaintiff
in his complaint alleges that in the month of December, 1901,
the defendant deserted and abandoned him without any just
cause and against his will and consent. The evidence intro-
duced upon the trial of the cause was to the effect herein-
before cited.

It is unnecessary to go into detail as to the evidence pro-
duced by the respective parties, and we shall content our-
selves by stating the ultimate facts we gather from the en-
tire evidence in the case. As said above, the evidence was
before the trial court on paper the same as it is here, and
we are therefore in the same position as the trial court with
reference to judging of the credibility of witnesses and their
bias and prejudice, is any, in the case. It satisfactorily ap-
pears to us that the fundamental cause of the respondent de-
serting his wife on June 8, 1896, is more largely due to his
infatuation with another woman than to any cruel or inhu-
man treatment received by him at the hands of his wife.
It is probably true that his attentions to another woman
called down on his own head some well-merited chastisement
from his wife. It stands admitted that he first deserted his
wife and that a court of competent jurisdiction refused to
grant him a divorce. It must therefore follow that he de-

serted her without cause. He thereafter left the state and took up his domicile in a foreign jurisdiction, where he again sought to obtain a legal release from the obligations of his marital contract. In order to defend herself against his charges, the wife was compelled to leave her home in Indiana and come to this state, where she successfully resisted his efforts to obtain a divorce. The circumstances surrounding the plaintiff's subsequent conduct toward her led to the irresistible conclusion that he was seeking grounds for a divorce rather than a sincere and *bona fide* reconciliation with his wife. If he had engaged in these meetings and interviews with his wife inspired and prompted with a desire to win her favor and discharge the obligations of his marriage vows toward her, it is difficult to understand why he should have deemed it necessary to have those meetings and conversations where he could have witnesses overhear him, and should also select a witness to be in reach where he could hear. But putting all this aside, and conceding all the plaintiff says is true, and that he did faithfully and sincerely seek to be reconciled to his wife, and again discharge his marital duties and obligations, there is another and even more serious reason why he should not have been granted a decree. The plaintiff was the first to commit a statutory breach of the marital contract. He deserted his wife and admits that for more than five years he did not return and when, after repeated failures to obtain a divorce, he does seek reconciliation, it is not at the home he deserted, but in a foreign state to which she has come in answer to process issued on his application. In this state the husband has a legal right to select the domicile and the wife must follow him (*Roby v. Roby, supra*), but it is exceedingly doubtful if while he is still a deserter of his wife, he can change the domicile and then as soon as she declines to take up her residence with him at the new domicile thus selected, thereupon convert her into a deserter of her husband. He did not request his wife to go with him to his new home and take up her residence with him until long after his desertion of her had ripened into a right of action in her favor under the

statute, both of Indiana (Indiana Rev. Stats. 1881, sec. 1032), and Idaho (Idaho Rev. Stats., sec. 2463). After her right of action had accrued she had a legal right to refuse to live with him if she saw fit to do so, and could still have maintained her action against him. (*Benkert v. Benkert,* 32 Cal. 468; *Coe v. Coe* (N. J.), 59 Atl. 1059; *Howard v. Howard,* 134 Cal. 346, 66 Pac. 367; *Ogilvie v. Ogilvie,* 37 Or. 171, 61 Pac. 627.) In this case the defendant showed a much clearer case of desertion against the plaintiff than he was able to show against her, accepting his own story of the occurrences. She made a good case against the plaintiff on the charge of desertion. Now then, if it be concluded that the wife was also guilty of a breach of the marital contract, we are still confronted with the proposition that one party to that contract is seeking a release from its further duties and obligations on the grounds of a breach by the other while he himself is also guilty of a like breach. Divorce is a remedy for the innocent only, and not for the guilty. Here the plaintiff was the first to violate the marital contract. Two wrongs never make a right, and he who invokes relief in a court of equity ought not to be himself guilty of the same offense against his adversary as that on account of which he seeks relief. The doctrine of recriminatory defenses is of ancient origin and is as old as the rules of equity. (2 Bishop on Marriage, Divorce and Separation, sec. 342; Nelson on Divorce and Separation, sec. 426.) It has been specifically enacted into sections 2464 and 2466 of our Revised Statutes, and has been recognized and approved by all the American courts. (Bishop on Marriage, Divorce and Separation, sec. 431; 14 Cyc. 648; *Day v. Day* (Kan.), 80 Pac. 975; *Wheeler v. Wheeler,* 18 Or. 261, 24 Pac. 900; *Tracey v. Tracey* (N. J.), 43 Atl. 713; *Conant v. Conant,* 10 Cal. 249, 70 Am. Dec. 717; *Brenot v. Brenot,* 102 Cal. 294, 36 Pac. 672.)

We conclude that the trial court erred in not finding in favor of the defendant on her defense of recrimination. With such a finding the judgment should have been a denial of the divorce. These parties must be left where the court found them, and if the plaintiff so conducts himself as to

hereafter bring himself within the purview of the law in such cases, and the defendant should refuse to be reconciled to him, he may then have a standing in court, but not until he does so. The order denying a new trial is reversed and the cause is remanded, with directions to the trial court to dismiss the action and enter judgment in favor of the defendant and against the plaintiff for all costs incurred and for a reasonable attorney's fee for the prosecution of this appeal.

Stockslager, C. J., and Sullivan, J., concur.

### ON PETITION FOR REHEARING.

(January 23, 1906.)

SULLIVAN, J.—A petition for rehearing has been filed in this case in which the petitioner asks for a rehearing in regard to costs and attorney's fees. On this appeal the judgment of the court below was reversed and the cause remanded with instructions to the trial court to dismiss the action "and enter judgment in favor of the defendant and against the plaintiff for all costs and for a reasonable attorney's fee for the prosecution of this appeal." Under that direction the trial court is directed to enter judgment in favor of the defendant for all taxable costs incurred in the trial of the said case, which would include, among others, the expenses of all witnesses procured on the trial of the cause and the expense of taking all depositions used on the trial. And as this court did not require a printed transcript to be filed herein, will allow $50 as a reasonable fee to pay for the typewriting of said transcript, which must be taxed as a part of the costs on appeal, and an attorney's fee of $200 is allowed for the preparation of this appeal, and for all services of the attorney in presenting the case to this court. Also such other costs as are allowed by law and the rules of this court may be taxed against respondent. The application for rehearing is denied.

Stockslager, C. J., and Ailshie, J., concur.