(April 23, 1910.)

JUDSON SPOFFORD, Appellant, v. JULIA R. SPOFFORD, Respondent.

[108 Pac. 1054.]

APPELLATE PRACTICE—WEIGHT OF EVIDENCE—DIVORCE—CRUELTY—INDUCING CAUSE—AGGRAVATION OF OFFENSE.

(Syllabus by the court.)

1. Where the trial court has heard and determined a case solely on depositions and documentary evidence, and an appeal is taken from the judgment on the ground that it is not supported by the evidence, the appellate court will examine and weigh the evidence the same as if the case were being tried *de novo.*

2. Where a decree of divorce is asked by the husband on the grounds of cruelty by the wife, and such cruelty is alleged to have consisted in the wife's hostile demonstrations and lecturing, nagging and hectoring the husband on account of what she deemed to be undue attentions and intimate relations on the part of the husband toward other women, and the evidence discloses that he had been so indiscreet in his conduct toward others as to arouse suspicion on the part of his wife, the conduct of the wife in her protests and outbursts of feeling will not be viewed with the same severity and rigidity by the law as it would be in a case where no such apparent provocation existed.

3. The party to the marital contract who by his acts and conduct induces suspicion from the other spouse and thereby pro-

vokes remonstrance, protests and hostile demonstrations from the other party to the contract, must expect when the crisis comes to exercise a degree of patience and forbearance which the law would not otherwise expect of him under more favorable circumstances.

4. Evidence in this case examined, weighed and considered, and *held* not sufficient to justify the granting of a divorce.

APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action for divorce. Decree denied, and plaintiff appeals. *Affirmed.*

Eugene O'Neill, and H. G. Redwine, for Appellant.

In this case none of the witnesses appeared before the district judge. The case was heard before a referee and appellant invokes the rule laid down in *Roby v. Roby,* 10 Ida. 139, 77 Pac. 213; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938.

Extreme cruelty may be as effectually caused by conduct which produces mental suffering, and robs complainant of his or her peace of mind as by blows inflicted; and to many persons the burden of the mental suffering will be much harder to bear than the burden of any ordinary physical suffering. (*Sylvis v. Sylvis,* 11 Colo. 319, 17 Pac. 916; *Barnes v. Barnes,* 95 Cal. 171, 50 Pac. 298, 16 L. R. A. 660; *McDonald v. McDonald,* 155 Cal. 665, 102 Pac. 927, 25 L. R. A., N. S., 45; *Kapps v. District Court* (Nev.), 103 Pac. 235; *Avery v. Avery,* 148 Cal. 239, 82 Pac. 967.)

Black & Wernette, for Respondent.

The gravamen of the complaint of appellant is cruelty and inhuman treatment. It is essential to establish this ground for divorce that the wrongs inflicted must be wilful and intentional. The absence of this element will defeat the divorce. (*Ring v. Ring,* 118 Ga. 183, 44 S. E. 861; *Miller v. Miller,* 78 N. C. 108; *Everton v. Everton,* 50 N. C. 210; *Shaw v. Shaw,* 17 Conn. 189, 7 Bish. Mar. & Div., sec. 1575; *Beckley v. Beckley,* 23 Or. 226, 31 Pac. 470; *Ennis v. Ennis,* 92 Iowa, 107, 60 N. W. 228; 14 Cyc. 601, 602.)

"The cruelty which lays a just and legal foundation for a divorce must be unmerited and unprovoked." (*Taylor v. Taylor,* 11 Or. 303, 8 Pac. 353.)

The plaintiff himself has been guilty of such action as estops him from claiming any grounds for divorce, because of the result which such actions had upon his wife, and because of her resentment of the treatment which he accorded her. (*Masterman v. Masterman,* 58 Kan. 748, 51 Pac. 277; *Wheeler v. Wheeler,* 18 Or. 261, 24 Pac. 900; *Johnson v. Johnson,* 14 Cal. 460; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938; *Ennis v. Ennis,* 92 Iowa, 107, 60 N. W. 228; *Reed v. Reed,* 4 Nev. 836; *Boone v. Boone,* 12 Or. 437, 8 Pac. 450.)

Where it appears that a defendant in a divorce proceeding has means and his wife has not, the court will allow her suit money and counsel fees. (*Day v. Day,* 12 Ida. 556, 86 Pac. 531, 15 Ida. 107, 96 Pac. 431.)

It is proper to grant counsel fees to wife, and order them paid. (*Pike v. Pike,* 123 Ill. App. 553; 9 Current Law, 93, sec. 7.)

AILSHIE, J.—This action was instituted by the husband against the wife, praying for a decree of divorce on the grounds of cruel and inhuman treatment. The plaintiff alleged that the defendant for a couple of years pursued a course of abuse, nagging and hectoring the plaintiff, until she drove him to the verge of nervous prostration, and impaired his health both physically and mentally. The defendant answered, denying the allegations of the complaint. The case was referred to a referee to take the proofs and report the same to the court. The trial court heard and determined the case solely on depositions; and under the rule heretofore announced by this court it is incumbent on us to examine and weigh the evidence on appeal the same as if the case had never been passed upon by the trial court. (*Roby v. Roby,* 10 Ida. 139, 77 Pac. 213; *Stoneburner v. Stoneburner,* 11 Ida. 303, 83 Pac. 938.)

The trial court denied the plaintiff a decree of divorce, and this appeal is from the judgment and an order denying a

motion for a new trial, and the appellant has assigned 217 errors. Most of these go to the admission and rejection of evidence, but the whole question resolves itself down to the sufficiency of the evidence to support the findings and judgment of the trial court. We have examined the record in this case, consisting of more than 600 pages, with patience and care for the purpose of determining not only the facts it establishes, but also the correctness of the rulings of the court in the admission and rejection of evidence. Since the proofs were taken in this case before a referee, the evidence which was excluded is incorporated in the record as well as the evidence alleged to have been improperly admitted being in the record. We shall, therefore, judge and determine the rights of the parties upon the whole record as it appears before us— giving weight to that which was proper to be considered and excluding such, if any there be, as was improperly admitted.

We shall not attempt to set forth in this opinion the evidence produced on either side of the case, nor shall we attempt to analyze the proofs offered. To do so would serve no useful purpose whatever, and to incorporate a statement of the proofs in this opinion would be of no interest or consequence to anyone. We shall content ourselves with stating briefly some of the conclusions that must inevitably be drawn from the record in this case.

At the time of their marriage the plaintiff, who is appellant here, was about fifty-six years old, and the defendant about forty-seven. They intermarried at Trenton, N. J., on September 25, 1902, and lived together harmoniously until about August, 1905. In the year 1905 the appellant was engaged in promoting an electric railway project between Lewiston and Grangeville in this state, and during the meanwhile the parties were residing at Lewiston. In August of that year, plaintiff and respondent, in company with respondent's brother and his family, organized a camping party and invited a family named Twombley. The Twombleys were from Illinois. A few days after they went into camp Mrs. Spofford became greatly displeased over the conduct of her husband toward Mrs. Twombley, and remonstrated with her

husband about the matter. Appellant had in the meanwhile been paying Mrs. Twombley some attentions and courtesies which tended, perhaps, to arouse his wife's suspicion and to annoy one of her nervous and apparently jealous disposition. In a couple of days the respondent left the camp and went to their hotel in Lewiston and did not return. Appellant remained with the camping party for some two weeks, and in the meanwhile was in daily association with Mrs. Twombley and went fishing with her a time or two. In course of a month the Twombleys went east.

Some time after the Twombley went east there came to Lewiston a Mrs. Monteith and her sister, Miss Wills, who became intimate with the Spofford family. Mrs. Spofford soon became jealous of her husband's attentions to these women. The result of the wife's jealousy of the attentions her husband paid to these several women was many protestations, lectures, and, as the husband testifies, hostile demonstrations on the part of the wife, often extending far into the night and disturbing his rest and peace of mind and breaking down his health. This, he says, became so bad and trying he could no longer endure it, and he accordingly left his wife and declined to live with her any longer.

Under the circumstances of this case, the acts proven against the respondent cannot be held to constitute extreme cruelty within the meaning of the statute. (Sec. 2649, Rev. Codes.) By this we do not mean to say that respondent's conduct in this regard is commendable or that a man must forever endure it with patience. The appellant, however, has not been free from blame and censure. He has pursued a course of conduct toward other women which was calculated to arouse suspicions on the part of the wife and to kindle the fires of jealousy. It is fair to say that the record entirely fails to show that appellant has been criminally intimate with any of these women; it rather inclines us to the belief that he has not, but he has been indiscreet and unwise in his conduct, and he certainly owed it to his wife as well as to himself to "avoid the appearance of evil." It is fully as essential to domestic happiness and tranquility that the parties

to the marriage contract so conduct themselves that each may be above suspicion from the other as it is to in fact be innocent of the suspicioned act.

The wife in this case is not a woman of rugged health. She was, on the contrary, of a nervous and excitable temperament. Her jealousy was easily excited. The attentions and courtesies paid by her husband to Mrs. Twombley, Mrs. Monteith and Miss Wills, and a couple of other women whose names have appeared occasionally in the record, were liable to arouse her suspicions and anxiety; and this in connection with his apparent neglect of his wife at the same time was calculated to disturb the peace of the home. In the meanwhile, these several women were carrying stories back and forth between the husband and wife, were telling the husband various and sundry stories about the wife and the things she had said about his conduct and what she would do with reference to exposing and humiliating him, and also things he should have done or said. In the midst of this state of affairs it is not to be wondered if the wife should on some occasions so forget herself as to administer a rebuke to her husband and perhaps do and say some things which, standing alone, would appear cruel or wholly unjustifiable. It is true that such a course of procedure never improves the conditions; it rather tends to aggravate them. But that fact does not lessen the strain of human nature in the parties and their natural tendency to relieve their minds by words and acts. The party to the marital contract who by his acts and conduct thus invites a remonstrance, protest or demonstration from the other party to the contract must expect to exercise a degree of patience and forbearance which the law and good morals would not expect of him under more favorable circumstances.

"Whenever one has well-grounded suspicions," says Mr. Justice Allen in *Masterman v. Masterman*, 58 Kan. 748, 51 Pac. 277, "That the other is bestowing his attentions elsewhere, and that he finds more congenial society with another than with his wife, the seeds of discord are sown, and the rancorous weeds of jealousy and distrust are sure to grow, and overshadow and wither the flowers of domestic felicity.

. . . . Shall the wife be censured because the pangs of jealousy, excited by the husband's conduct, force from her violent, though natural, expressions of injured feeling, in his presence? Her conduct is to be viewed and approved, or censured, according to the state of circumstances as they were presented or made known to her. She is presumed to have the feelings of a woman, and to act in accordance with the natural instincts and promptings of her sex.'' (See, also, *Wheeler v. Wheeler,* 18 Or. 261, 24 Pac. 900; *Johnson v. Johnson,* 14 Cal. 459; *Beckley v. Beckley,* 23 Or. 226, 31 Pac. 470; *Ennis v. Ennis,* 92 Iowa, 107, 60 N. W. 228; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938.)

If we were in the business of advising matrimonial discordants, we would tell this aged and doubtless well-meaning couple that, in our judgment, neither one is free from fault, and that a mite of charity and a little forbearance and a portion of the courtesies and attentions they must have practiced in other days, mutually administered, would in their case adjust what is now only an aggravated case of jealousy induced by suspicious conduct.

After an examination of the whole record, we find no error which requires a reversal of the judgment and we are satisfied that the trial court properly denied a divorce in this case.

The court by special order permitted typewritten transcript and briefs to be filed instead of printed transcript and briefs as required by the rules. We will, therefore, allow the respondent the sum of twenty dollars, which may be taxed as costs for typewriting her brief. The transcript has been prepared by the appellant and the cost of that, if it has not already been paid, is a charge against the appellant. It is also ordered that the respondent recover from appellant the sum of $250 to pay attorney's fees for services rendered on this appeal. This is in conformity with the practice heretofore pursued in this court. (*Roby v. Roby,* 10 Ida. 139, 77 Pac. 213; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938.)

Judgment *affirmed,* with costs in favor of *respondent.*

Sullivan, C. J., and Stewart, J., concur.

ON PETITION FOR REHEARING.

(June 3, 1910.)

PER CURIAM.—A petition for a rehearing has been filed in this case and is supported by a somewhat exhaustive brief and a review of the pleadings and evidence in the case. Counsel for the petitioners seem to think that the court has mistaken the allegations of defendant's answer for evidence in the case. Counsel also devote some time in their petition and brief to a discussion of the rules of pleading, and the fact that under the statute affirmative allegations in the answer are deemed denied.

We have devoted more than a week to an examination of a voluminous record in this case and to an analysis of the evidence introduced, and after doing so we reached the conclusion which has not been altered or modified by the petition and brief for rehearing. We have given more careful consideration to the evidence given by appellant himself than perhaps any other part of the record, and our conclusions rest perhaps more largely on the evidence given by appellant on direct and cross-examination than upon any other evidence in the case. It is doubtful, indeed, if the appellant's own testimony as modified by him on cross-examination would be sufficient to entitle him to the decree prayed for. It has been said that "hard cases are the quicksands of the law," and we are forcibly reminded of the significance of this epigram by the facts and circumstances of this case.

Counsel assert that the appellant will not live with respondent any more even though he does not procure a divorce. That may be true, but for that condition we are not responsible. If divorces were to be granted to all those who have entered the marital state and afterward make like assertions, the courts would be busy with that class of litigation to the exclusion of other matters. We fully agree with appellant that the respondent's conduct has been harsh and sometimes unjust and not of such a character as was calculated to promote harmony and add to the marital felicity. On the other

Opinion of the Court, on Petition for Rehearing.

hand, the appellant himself has not added a large moiety to the peace and happiness of the connubial state, in the matter of his conduct toward respondent since these misunderstandings arose. As it appears to us, the charges and counter-charges here amount to merely an accumulation of those little disagreements, misunderstandings, misapprehensions, indiscretions, and outbursts of feeling and passion which the other party might have better overlooked and could have easily avoided or prevented.

We have not pretended to hold, nor do we wish to be so understood, that cruelty on the part of the wife may not become as much a cause for divorce in favor of the husband as if the cruelty were committed by the husband. Nor do we hold that cruelty may not consist of *acts and conduct* as well as *actual physical violence.* When, however, either party seeks a divorce from the other on the grounds of cruelty which consists merely in words and conduct as distinguished from physical violence, the occasion for the words and conduct and the circumstances under which they were provoked must be taken into consideration and duly weighed before arriving at the conclusion that they constitute such cruelty as will justify a decree of divorce.

We quite readily agree with counsel for appellant that this case presents some deplorable aspects and is calculated to provoke sympathy from one who will carefully examine the facts and circumstances as they are disclosed by this record. When viewed, however, by the unbiased mind of one who is not by force of employment partisan in his view of the parties and circumstances, that sympathy must necessarily go out in a measure toward both of the parties to the case.

We say again that we would not be justified in reversing the judgment in this case and ordering a decree of divorce. The petition is denied.