(No. 6945.   September 24, 1941)

MAURICE DEAN HOLDEN, Respondent, v. ALMA HARRIET HARTMAN HOLDEN, Appellant.

(116 Pac. (2d) 1003)

W. A. Ricks, for Appellant.

Mary Smith and W. Lloyd Adams, for Respondent.

AILSHIE, J.—This appeal is from a judgment of divorce and an order made after judgment denying application for modification of the order for custody of a minor child. For convenience we will refer to the parties as plaintiff and defendant. In limine, we may observe that the parties to this action are in no wise related to Mr. Justice Holden of this court.

Plaintiff sought divorce on the ground of "cruel and inhuman" treatment. Defendant answered, denying the material allegations of the complaint; and for cross-complaint against plaintiff alleged: (a) wilful desertion; (b) failure, for a period of more than one year, to provide for defendant the common necessaries of life; (c) adultery; and (d) cruelty. The trial court found in favor of plaintiff *on the charge of cruelty* and failed to find on any of the grounds for divorce set up in defendant's cross-complaint. So far as we have discovered, the charge of adultery by plaintiff was not sustained. There was evidence, however, introduced on the other causes of action alleged by defendant.

It is a uniform established rule in this court, that a failure to find on a material issue tendered by the pleadings, upon which proof is submitted, is reversible error. (*Cheesbrough v. Jensen,* 62 Idaho 255, 109 Pac. (2d) 889, and cases therein cited.) For these reasons, it

will be necessary to reverse the judgment and remand the case to the trial court.

In view of the fact that the judgment must be reversed and the cause be remanded, and the further fact that it is more than a year since the court heard the testimony and saw the parties; and that in the meanwhile an application has been made for modification of the order awarding the custody of the child; and, in view of the further fact, that an order awarding the custody of a minor does not become final and that application for modification may be made or renewed from time to time, (*Sauvageau v. Sauvageau*, 59 Idaho 190, 195, 81 Pac. (2d) 731) we have concluded that it will be to the best interests of all concerned and will best promote the ends of justice, to direct that this case be retried.

There are many things about this case that render it very peculiar and unusual. The trial judge fully appreciated the situation and gave some expression to his misgivings about the case in a memorandum opinion which he furnished counsel prior to making his findings of fact and entering a decree. Among other things, he said:

"Other things being equal, I have always taken the view that the custody of children, particularly those of tender years, should be with the mother, because it is there alone that they can get the tender intimate and affectionate care that a mother can give, and that such children need. However, in this case I find the child in a comfortable home where it will receive all necessary care, if not the best. On the other hand I am confronted with the possibility that the defendant may not find the way to a better life which she has now chosen to be as easy as she anticipates, particularly for one who has once transgressed. She will be imposed upon because of her past, and her sister's family will not shield her nor help her, and I am afraid that if the way gets tough, she may justify herself in departing from the high resolve she has now made. I am also conscious of the fact that the custody of the boy would be a help to her; that the responsibility would assist her in maintaining a proper way in life. But, it is not the mother's interest but that of the child that the court must consider."

Other courts have had to deal with very similar problems as may be seen in *Abel v. Ingram,* (Mo.) 24 S. W. (2d) 1048.

These parties were married when the defendant was only sixteen years of age. They had been "going together" for about one year prior to their marriage and, according to defendant's testimony, plaintiff had illicit relations with her some six months prior to their marriage. So, according to her testimony, he not only violated the criminal laws of the land (sec. 808, Code, Dist. of Columbia) but the moral standards of society as well, in his relations with her prior to their marriage.

Great stress, in plaintiff's brief, is placed on the conduct of defendant in reference to her relation with one Delaney and her bearing a child by him. Proof of that fact was introduced by plaintiff, not in support of a charge of adultery but in support of the charge of cruelty; and the proof thereof appears to have influenced the trial judge in making his findings in regard to cruelty. As we view the matter, Delaney was the arch offender in this case and ought to have been brought before some criminal court that would have given him the limit of the law; but he is not before us and we are left to deal, as best we can, with his victims—plaintiff and defendant.

The chief contest, however, between the parties here, is over the custody of the minor child, Carl Holden, who is now past four years old. The memorandum opinion of the trial judge was made a few days after the conclusion of the trial in July, 1940, but the findings and decree were not entered until February 15, 1941. Motion for modification of the decree for custody of the child was made May 9th upon affidavits. No counter showing was made and, on May 9th, the judge made an order denying the motion.

A very thorough and careful examination of this record and the exhibits convinces us that a further investigation and examination should be made with regard to the facilities and opportunities the respective parties have for taking care of this child in the future and properly training and bringing it up. It is therefore

thought to be to the best interest of all concerned to have the case retried. The testimony of witnesses absent from the state may be used at the trial; (*State v. Brassfield,* 40 Idaho 203, 232 Pac. 1; *State v. Ward,* 51 Idaho 68, 1 Pac. (2d) 620; *State v. Johnston,* (Idaho) 113 Pac. (2d) 809, 814) and depositions or witnesses, or both, may be produced touching any matter within the issues, about which the parties may desire to submit proofs.

Plaintiff has no home himself and no facilities for taking care of the child, except that he says:

"I have talked with my mother, and she has agreed to follow the mother's way of taking care of the child; and that I am to support him, and she will take care of him."

He describes his parents' home as follows:

"Our home is located just two blocks east of the Mormon Church. It is a seven room house; two rooms upstairs; two bed rooms downstairs, a living room, dining room, kitchen and front porch; it has screens on all the windows and all doors; and we have a nice back yard, and a nice front yard with lawn and trees. It's a very comfortable home. We don't have the water inside, but we have it outside."

His only source of income, according to his own testimony, is $40 per month, realized from operating a gas station.

On the other hand, defendant is working and appears to have a steady job, in a cleaning establishment, at $100 a month. If awarded the child, she would have to have a nurse or her sister take care of the child in the daytime and of nights she would be with the child, to look after and care for it. Her residence in Washington is described as "a home that was made into apartments . . . . not very luxurious, But it's very comfortable, . . . . two rooms and semi-private bath, and we have a large yard for the children to play in, and we really have a very nice place. And there we pay forty dollars a month rent, and we divide it, so that makes my share twenty dollars; and I pay my sister for my baby's room—or, rather my baby's care and board. And as I said, I have a pretty good job, and I make fairly good money, and we never want for anything."

Besides defendant and her two children, the home would be occupied by defendant's sister and her husband.

The chief controversy running throughout the case relates to the charge by defendant, that plaintiff communicated to her a venereal disease; and by plaintiff, that defendant had illicit relations with one Delaney. There is nothing in the record to indicate that defendant ever committed any act of unchastity with any one but plaintiff (before their marriage) and with plaintiff's ever-present "dear friend Delaney" after the marriage.

According to the testimony of plaintiff, he first learned that his wife had gonorrhea about April, 1938. She says he told her he had it in March, 1938, and that he "gave it to" her. He now has the effrontery to say, "It got around to my friends. Mr. Delaney was one of them." Now, defendant evidently contracted the disease from *either plaintiff or his "good friend Delaney."* It is passing strange that his friend Delaney and his other "friends" knew his wife had gonorrhea and he didn't know it but had to learn it from the ubiquitous Delaney. That testimony is unbelievable. Defendant alleged and testified, that plaintiff communicated this venereal disease to her and that he informed her of the fact. It is admitted that defendant contracted gonorrhea from some source. If defendant knowingly communicated it to her, that would constitute cruelty. 17 Am. Juris., sec. 78, p. 187; *Wilson v. Wilson,* (R. I.) 13 Atl. 102; *McMahen v. McMahen,* (Pa.) 41 L. R. A. 802; *Carbajal v. Fernandez,* (La.) 58 So. 581; *Morehouse v. Morehouse,* (Conn.) 39 Atl. 516, 519. See also, *Radermacher v. Radermacher,* 59 Idaho 716, 719, 87 Pac. (2d) 461.

The story of the acquaintance and association of plaintiff and defendant with Delaney is another example of misplaced confidence for which both are chargeable. It is easy to place the blame on defendant because *she is the woman in the case,* but plaintiff can not escape blame. He constantly associated with Delaney and had him in his home regularly; and later plaintiff refused to support his wife, and his friend Delaney furnished her subsistence when she had opportunity in no other way of obtaining it. She did have the strength and courage to break

away from Delaney and refuse to further accept assistance or associate with him. At least her offense was not unpardonable. (St. John 8, 3-11.) It is perfectly clear that neither party to this action is free from blame and responsibility for their present plight. In such case each is required to exercise "a degree of patience and forbearance which the law would not otherwise expect." *Spofford v. Spofford,* 18 Idaho 115, 108 Pac. 1054; *Stoneburner v. Stoneburner,* 11 Idaho 603, 83 Pac. 938.

On the trial of this case plaintiff's mother, who he expects to have charge of the child, was not called as a witness and did not appear in the case. We do not know how she feels about the matter except from plaintiff's statement and the testimony of defendant, to the effect that when she first came to Idaho with plaintiff, and they were stopping with plaintiff's parents, his mother told her "she didn't want to have the responsibility of raising her grand children; she said we should raise them ourselves."

Another thing appears in defendant's brief, which is worthy of consideration, although we do not find it in the record elsewhere. It is said:

"She [defendant] is willing to remove to Idaho and remain within the jurisdiction of the court where it will have constant supervision over Carl Dean; she offers to comply with any conditions the court may impose upon her to secure the custody of her baby."

By this observation we do not mean to intimate that the custody may not be awarded to one living beyond the jurisdiction of the court; in fact we have held such an order may be made in a proper case. *Roosma v. Moots,* 62 Idaho 450, 112 Pac. (2d) 1000.

It is important to learn just what kind of care, treatment and surroundings this child is going to receive wherever his custody may be eventually awarded. The rule for determining the custody of a minor child was announced in *Sauvageau v. Sauvageau,* 59 Idaho 190, 196, 81 Pac. (2d) 731, approved and followed in *Cheesbrough v. Jensen,* 62 Idaho 255, 109 Pac. (2d) 889, as follows:

"The question of the custody of the children must always be solved by determining what will be to the best

interests of the children (1 Schouler, Marriage, Divorce, Separation, etc., secs. 744-746) although, all other things being equal, the mother is considered the best qualified to have the custody of children of tender age and of young girls. In this respect the common-law rule has been modified by the modern American cases."

The judgment and also the order for custody of the child are reversed and a new trial is granted, at which time the whole case may be retried and the problem as to the care and best interest of the child may be more thoroughly examined into and considered. Costs awarded in favor of appellant.

BUDGE, C.J., GIVENS, MORGAN and HOLDEN, JJ., concur.