194 P.2d 281

**CURTIS et al. v. SIEBRAND BROS. CIRCUS & CARNIVAL CO. et al.**

No. 7372.

Supreme Court of Idaho.

May 6, 1948.

Rehearing Denied June 21, 1948.

George R. Phillips and H. J. Swanson, both of Pocatello, for appellants.

Merrill & Merrill, of Pocatello, for respondents.

**HOLDEN, Justice.**

June 28, 1946, an action was commenced in the district court of Bannock county entitled Doyle Curtis and Raymond Curtis v. Siebrand Bros. Circus & Carnival Co., a partnership; and John Doe Siebrand (whose true first name was unknown), individually. The action was brought to recover general damages in the sum of $4,000 and punitive damages in the sum of $1,000. For the recovery of general damages it was alleged: "That on or about the 24th day of June, 1946, in the evening of that day, the plaintiffs, while in attendance at the defendant's Carnival, in Pocatello, Idaho, were set upon by the defendant's agents, and servants, while such agents and servants were acting in the line, course, and scope of their employment, and that the plaintiffs were violently, maliciously, and viciously assaulted with a deadly weapon, to-wit: a black jack, and were beaten, struck, kicked about the head, face, chest and arms, so that the plaintiffs were badly bruised and injured, to their damage in the sum of $5,000." The complaint did not allege punitive damages.

Summons issued June 28, 1946, and was personally served on defendant and respondent, John Doe Siebrand (whose true name, it was later found, is Peter Siebrand), in Bannock county, on the same day, by Deputy Sheriff Kenneth Dunn. After the expiration of the time within which defendants could appear or plead to the complaint, to-wit, August 5, 1946, the clerk entered the default of the defendants. On the same day plaintiffs moved to amend the title of the action to make it read: "Sie-

brand Bros. Circus & Carnival Co., a Partnership," and also to further amend the title of the cause so that it would read "Pete Siebrand" instead of John Doe Siebrand, which motion was by the court granted. And on the day last aforesaid, when the cause came regularly on for trial, it appears "plaintiffs were sworn and testified, and the following witnesses were sworn and testified, namely, Dr. J. H. Lynn of Pocatello, Idaho; O. G. Roche and George R. Phillips of Pocatello, Idaho."

August 7, 1946, judgment was duly and regularly rendered and entered against defendants, as follows:

"The Court having heard and considered the evidence offered finds that the allegations of the Complaint are true, and that the defendants, their agents and servants in the line, course, and scope of their employment, violently, maliciously and viciously assaulted the plaintiffs with a deadly weapon, to-wit: some type of black jack and that the plaintiffs were beaten, struck and kicked about the head, face, chest and arms, and were badly bruised and injured. The Court finds the general damages in favor of the plaintiffs and against the defendants in the sum of $2,500.00. The Court further finds from the evidence that the plaintiffs are entitled to exemplary damages and fixes the amount of exemplary damages in the amount of $1,000, wherefore,

"It Is Adjudged and Decreed That the plaintiffs, Doyle L. Curtis and Raymond Curtis do have and recover of and from the defendant Siebrand Bros. Circus & Carnival Co., a Partnership, also known and advertised as Siebrand Bros. Circus and Carnival Combined, and as Siebrand's Bros. Carnival and Pete Siebrand doing business under the name of Siebrand Bros. Carnival & Circus Co., in the amount of $3,500.00, together with costs of Court taxed in the sum of $21.60."

January 31, 1947, defendants served on plaintiffs notice of motion and motion to set aside the clerk's default as well as the said judgment, the notice and motion being filed February 3, 1947, less than six months after the entry of the judgment. The motion was made on the grounds (1) that the clerk's default as well as the judgment were "taken against these defendants through the mistake, inadvertence, surprise and excusable neglect of themselves and their agents and attorneys"; (2) That the "judgment was entered after an amendment of the complaint, and particularly the title thereto, without notice on the defendants or any of them"; and (3) that "said default and judgment has been taken upon a complaint which fails to state a cause of action against" the defendants. The motion was supported by the affidavits of C. W. Tierney, managing agent for Toplis and Harding, Inc., a corporation of Chicago, Ill.; defendant Peter W. Siebrand, and A. L. Merrill. At the same time a demurrer and answer to the complaint were served.

February 17, 1947, plaintiffs served and filed the affidavit of Kenneth Dunn, George R. Phillips, and H. J. Swanson in opposition to the motion of the defendants to set aside the clerk's default and vacate the judgment. The motion was heard February 7, 1947. February 28, 1947, the motion was granted and an order made and filed vacating and setting aside the clerk's default and the judgment. The appeal to this court is from the order as well as an amendment thereof.

Section 5-905, I.C.A., so far as pertinent here, provides: "The court may * * * also relieve a party, or his legal representative, from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect; and whenever, for any reason satisfactory to the court or the judge thereof, the party aggrieved has failed to apply for the relief sought during the term in which such judgment, order or proceeding complained of was taken, the court, or the judge thereof in vacation, may grant the relief upon application made within a reasonable time, not exceeding six months after the adjournment of the term. Whenever any judgment, order or proceeding is taken against a party otherwise without default, through the neglect or failure of an attorney of such party to file or serve any paper within the time limited therefor, the court, or the judge thereof, in vacation, shall, upon application filed within the time above limited, set aside such judgment, order or proceeding * * *."

At the outset we point out this court held in Savage v. Stokes, 54 Idaho 109, 115, 28 P.2d 900, 902: "The motion to vacate and set aside the judgment was made on affidavits, no witnesses being examined before the court [the motion in the case at bar was also heard on affidavits and no witnesses were examined]. It is the rule of this court, in such cases, that it will make an original examination of the evidence contained in the record, and will exercise its judgment and discretion the same as if the case were being presented to this court for determination in the first instance."

And, further, in Boise Flying Service v. General Motors Acceptance Corporation, 55 Idaho 5, 9, 36 P.2d 813, 814, this court adhered to Savage v. Stokes, supra, holding it "will [where a motion is heard upon affidavits and documentary evidence alone] examine the record as though the matter had never been heard or examined by the trial court, and *will exercise its discretion in the matter, the same as a trial court is authorized to do in such matters.*" (Emphasis added.)

We have uniformly so held: Van Camp v. Emery, 13 Idaho 202, 207, 89 P. 752; Council Improvement Co. v. Draper, 16 Idaho 541, 550, 102 P. 7; Parsons v. Wrble, 19 Idaho 619, 623, 115 P. 8, 13; Hall v. Whittier, 20 Idaho 120, 125, 116 P. 1031.

Moreover, whether it be a motion heard and determined on affidavits, or a case tried and determined by a trial court upon record evidence, no witnesses being examined, the same rule is applied, to-wit, that this court is "in as good position to find the facts established by the record as was the trial judge", as we held in Woodruff v. Butte & Market Lake Canal Co., 64 Idaho 735, 746, 137 P.2d 325, 329. Other cases so holding are: Ainslie v. Idaho World Printing Co., 1 Idaho 641; Roby v. Roby, 10 Idaho 139, 77 P. 213; Stoneburner v. Stoneburner, 11 Idaho 603, 83 P. 938; Van Camp v. Emery, 13 Idaho 202, 89 P. 752; Council Improvement Co. v. Draper, 16 Idaho 541, 102 P. 7; Spofford v. Spofford, 18 Idaho 115, 108 P. 1054; Parsons v. Wrble, 19 Idaho 619, 115 P. 8; Jackson v. Cowan, 33 Idaho 525, 196 P. 216; McKenzie v. Miller, 35 Idaho 354, 206 P. 505; Estate of Peterson, 38 Idaho 195, 220 P. 1086; Estate of Tormey, 44 Idaho 299, 256 P. 535; Pioneer Irr. Dist. v. American Ditch Ass'n, 50 Idaho 732, 1 P.2d 196; Keyes v. Keyes, 51 Idaho 670, 9 P.2d 804; Cannon v. Seyboldt, 55 Idaho 796 at page 800, 48 P.2d 406; John Hancock Mut. Life Ins. Co. v. Girard, 57 Idaho 198, 64 P.2d 254; Phipps v. Boise Street Car Co., 61 Idaho 740, 107 P.2d 148.

Nevertheless, it is contended where an application is made to open a default, and the application is supported by affidavits, no witnesses being examined, as in the case at bar, and the trial court makes an order opening and vacating the default, and an appeal is taken from such order, on appeal the trial court will not be reversed unless it clearly appears the trial court abused its discretion. The rule so contended for is not the rule applicable to a case where the trial court hears and determines the application upon affidavits, no witnesses being examined, as in the instant case. The applicable rule is where an application is made to open and vacate a default, and the application is supported by affidavits, no witnesses being examined, and the trial court makes an order opening and vacating the default, and there is an appeal from such order, as in the case at bar, then and in such case, this court will *exercise its own discretion* in passing on the matter, without regard as to whether the trial court did, or did not, abuse its discretion in opening and vacating the default. To hold otherwise would squarely overrule the long line of our own cases above cited.

Furthermore, in considering a motion to vacate and set aside a judgment, it must be kept in mind that a judgment is property, of which the owner should not be deprived without due process of law. Savage v. Stokes, supra, 54 Idaho at page 116, 28 P.2d 900.

As above pointed out, respondents' motion to vacate and set aside the clerk's default and the above mentioned judgment was supported by the affidavits of C. W.

Tierney, respondent Peter W. Siebrand and A. L. Merrill. We quote these affidavits so far as pertinent on the first ground of the motion:

C. W. Tierney:

"That he is Managing Agent for Toplis and Harding, Inc., a corporation, of Chicago, Illinois, which corporation engages in the adjustment of claims and in acting as agents for various persons and companies in the investigation of claims and in defense of litigation arising thereon; that as such the said Toplis and Harding, Inc., has for a number of years last past acted as an agent for P. W. Siebrand, sometimes known as Pete Siebrand, and the Siebrand Bros. Circus, the above named defendants; that affiant has had, for more than ten years last past, managerial charge of all items of business referred to said corporation by the above named defendants, and said defendants have fully relied upon the above named corporation and the affiant in such matters of business as have been so referred. That for more than ten years last past, and prior to the filing of the above entitled suit, all legal business in Southeastern Idaho, and particularly in the above entitled district, which had been entrusted to the above named corporation and which required attention, was referred to L. E. Glennon, Attorney at Law, Pocatello, Idaho, and said business so referred was always promptly and competently handled, all of which was within the full and complete knowledge of affiant

"That on the 29th day of June, 1946, Toplis and Harding, Inc., the corporation aforesaid, received a telegram from P. W. Siebrand, Siebrand Bros. Circus, from Pocatello, Idaho, advising that he had been served with summons in a suit by Doyle L. Curtis and Raymond Curtis, seeking damages in the amount of $5,000.00 on claim of assault, and also advising further of Siebrand's future whereabouts, and which telegram conveyed to Toplis and Harding, Inc., the information that the defense was to be promptly undertaken by it for and on behalf of said defendants; that this telegram was delivered to affiant, who gave the matter immediate attention. That on July 1, 1946, and without any knowledge that the Hon. L. E. Glennon was no longer in the practice of the law, affiant, in the name of Toplis and Harding, Inc., dispatched a telegram to L. E. Glennon, Pocatello, Idaho, requesting that he handle the suit of Curtis v. Siebrand Bros. Circus, advising that plaintiffs' counsel was H. J. Swanson, Pocatello, Idaho, and that Siebrand was then in Twin Falls, Idaho, and requested Mr. Glennon to secure local assistance if necessary and investigate and report on the matter. That the sender of the telegram was never advised that it was not delivered. That on August 2, 1946, affiant prepared, signed and caused to be mailed to L. E. Glennon in Pocatello, Idaho, a letter quoting the telegram sent to him on July 1, 1946, and requesting that a report of the investigation be sent to affiant at the earliest possible moment; that the envelope which

contained said letter was duly stamped and the return address of Toplis and Harding, Inc., Board of Trade Building, Chicago, Illinois, was upon said envelope; that said letter was never returned to Toplis and Harding, Inc., or to the affiant; that affiant received no reply to said telegram and letter but believed both had been duly delivered, and due to long and continued business relations wtih the said L. E. Glennon, affiant felt assured that the matter would be properly handled and that no default would occur.

"That other communications were thereafter addressed to the said L. E. Glennon asking for a report on the status of said case, and on December 26, 1946, affiant addressed a letter to L. E. Glennon, Pocatello, Idaho, touching the above entitled matter, which letter, among other things, contains the following:

" 'We have written you on several occasions requesting a report on this case. We are beginning to get disturbed about your failure to answer our letters and to wonder whether the matter is receiving proper attention. Please write us at once on this subject.'

"On December 31, 1946, the Hon. L. E. Glennon, as District Judge, replied to the above letter as follows:

" 'Toplis and Harding, Inc.
Board of Trade Building,
Chicago 4, Illinois.
 Re: Doyle L. and Raymond Curtis vs. Siebrand Brothers Circus.
 Register No. 14384.

Gentlemen:

This is in reply to your letter of December 26, 1946. If you will refer to your own records you will find that I advised you a long time ago that I was no longer in private law practice, and that I could not represent you. Please bear this in mind, and arrange with some other local lawyer to represent you.

I have examined the court records in regard to the above matter; and find that a default judgment was entered here, Judge Isaac McDougall's Division of this court, on August 7, 1946, for the sum of $3500.00 and $21.60 costs.

Further, do not ask me to recommend a lawyer, as I cannot do that. There are many competent lawyers here, whose names and rating you will find in Martindale.

Thanking you for past favors, I remain
 Sincerely yours,
 L. E. Glennon.'

"This was the first information that had come to the affiant or to Toplis and Harding, Inc., that an appearance had not been made for the defendants or that default had ever been entered. That immediately the law firm of Merrill & Merrill, Pocatello, Idaho, was engaged to represent said defendants in this suit.

"Affiant has searched the files of Toplis and Harding, Inc., but has not been able to find information advising that Mr. Glennon was no longer engaged in the practice of the law, and avers that the transmission of such information miscarried and did not

come to the attention of Toplis and Harding, Inc., or affiant.

"Affiant further avers that he is advised and believes and so charges the facts to be that said defendants have a good and meritorious defense in this action and relied wholly upon Toplis and Harding, Inc., and affiant to assert such defense. Affiant further positively avers that he had definitely assumed that legal appearance had been made for said defendants, and, by reason of the long course of business and the attentive consideration of all matters referred by affiant to the said L. E. Glennon, Attorney at Law, that the rights of the defendant were undoubtedly fully and duly protected and that the failure to make an appearance and to answer plaintiffs' complaint has been due to inadvertence and a misunderstanding as herein recited."

Peter W. Siebrand:

"That he is one of the defendants in the above entitled action and is the individual referred to as 'Pete Siebrand' therein mentioned and makes this affidavit for and on behalf of himself and the other defendant; that Siebrand Bros. Circus & Carnival Co. is a partnership composed of Hiko Siebrand and Peter W. Siebrand as firm members, and they have operated under the name of Siebrand Bros. Circus & Carnival Co.; that the affiant has never done business individually in the name of Siebrand's Bros. Carnival & Circus Co., nor under the name of Pete Siebrand, but sometimes is known and referred to as Pete Siebrand.

"That on or about the 24th day of June, 1946, affiant was in Pocatello, Idaho, presenting a performance by Siebrand Bros. Circus & Carnival Co., a partnership; that there was a concession or show operated independently along with the defendants' business by a man named John Dugan, over which party the defendants had no control, and neither did the defendants have any control over the agents, servants, and employees of such concession owner and operator.

"That during the evening of said day affiant was advised that an altercation had arisen between the above named plaintiffs and a man by the name of Walter Van Meter, whom affiant is advised was a ticket salesman for said concession, and another man whose name is unknown to affiant, in or near said concession. That neither the affiant as an individual or the partnership above referred to had any control of any kind or character over the parties who participated in said affray and whom plaintiffs claim assaulted them, and they were not the servants, agents, or employees of said defendants or either of them, nor doing anything for or on account of the defendants and for whose conduct defendants are in no wise responsible.

"That affiant did not see the altercation at the time it occurred, but his attention was called to it at the end thereof, and he observed and saw the participants; that the plaintiffs herein did not appear to have been injured in any way, and affiant verily

believes they sustained no damages; that there was no black jack or other weapon in or around the premises where the altercation took place or in the possession of or upon the persons of the parties whom plaintiffs claim assaulted them; that affiant was informed and believes that the plaintiffs had been drinking intoxicating liquor and that they provoked the affray and that if they received any injury it was because of the self-defense of the individuals they attacked, and which individuals used no more force than was necessary for their protection in repelling said attack.

"Affiant further avers that on the following day he was served with a summons and complaint in the above entitled cause; that he is a resident of the State of North Dakota and during the summer time is constantly traveling with said circus; that for a number of years last past he has relied entirely and exclusively upon his agents, Toplis and Harding, Inc., a corporation in Chicago, Illinois, to look after any suits or other legal matters connected with the business he was operating that might arise and has always, when served with papers of any kind, advised said corporation by telegram of the service upon him of any papers and that his rights have always been promptly and efficiently protected. That promptly upon the service of said summons and complaint as aforesaid, and upon the same day, he dispatched a telegram to Toplis and Harding, Inc., Board of Trade Building, Chicago, Illinois, advising that suit had been filed against him and his company in this instance and advising the names of the plaintiffs. On June 29, 1946, he received back a wire requesting him to advise the name of the attorney for the plaintiff and affiant's future whereabouts. On the same day affiant sent another telegram to the said Toplis and Harding, Inc., advising that the name of the attorney for the plaintiffs was H. J. Swanson, Pocatello, Idaho, and that he, the affiant, was leaving within the next two days for Twin Falls, Idaho, and could be contacted at that place. Affiant assumed he would be contacted there if anything further was needed. Affiant thereupon believed and by reason of a number of years of business relations with Toplis and Harding, Inc., had reason to believe, that the defense of this matter would be promptly and efficiently handled and that he would await further advice from them; that he had no intention whatsoever of avoiding or attempting to avoid answering and presenting his defense in this cause, but rightfully assumed his agents would cause to be made all necessary and timely appearance.

"Affiant has fully and fairly stated the facts of this case to A. L. Merrill, Attorney at Law, of the firm of Merrill & Merrill, Pocatello, Idaho, who is acting as counsel for him in this matter, and has been advised by his attorney, and verily believes, that upon such facts he has a good and meritorious defense to this suit, all of which more fully appears from the foregoing statements

and from defendants' answer tendered herewith."

A. L. Merrill (affidavit dated January 31, 1947):

"That he is an attorney at law, practicing law at Pocatello, Idaho, and a member of the firm of Merrill & Merrill who has been engaged in the defense of the above entitled action; that the engagement of said firm was on January 4, 1947, and that immediately thereon affiant took charge of the case and began to make an investigation. Affiant deemed it necessary to get in touch with Mr. P. W. Siebrand, one of the defendants in said cause, to get the fundamental facts in this case. That Mr. Siebrand was traveling from place to place and it was not possible to discuss the matter with him until his arrival in Pocatello, Idaho, on January 30, 1947. Affiant avers that from the time the matter was referred to him to date hereof he has diligently investigated the case, discussed the purported facts with various witnesses and has advised the defendants that upon the facts as presented there is a meritorious defense in this cause and that the same should be submitted to this court.

"Affiant has prepared, after consultation with Mr. Siebrand, the affidavit of merits and the answer signed and sworn to by the said Mr. P. W. Siebrand and is acquainted with the matters and things therein denied and alleged; that said allegations are supported by competent evidence and affiant believes the same to state a proper defense in this cause."

A. L. Merrill (affidavit dated February 6, 1947, and filed February 13, 1947):

"That he is, and for many years last past has been, personally acquainted with L. E. Glennon, who is at the present time one of the District Judges of the Fifth Judicial District of the State of Idaho; that the said L. E. Glennon was admitted to practice law in the State of Idaho on January 22, 1905, which right has never been revoked; that in November 1927 he made his home in Pocatello, Idaho, and continued the active practice of the law in Pocatello from said date until he was appointed District Judge of said District.

"This affidavit is intended to supplement the affidavit heretofore filed in the above cause by the affiant dated January 31, 1947."

The answer served and tendered and later filed in support of the motion made by respondents to vacate and set aside the clerk's default as well as the above mentioned judgment, denied the allegations set forth in the complaint and admitted that Siebrand Bros. Circus & Carnival Co. was a partnership at the time of the filing of the complaint and that it was composed of Hiko Siebrand and Peter W. Siebrand. That respondents, by further answer to the complaint, alleged:

"Further answering said complaint and by way of an affirmative defense thereto, defendants allege that if the plaintiffs, or

either of them, received or sustained any injuries or suffered any damages at the time and place alleged in said complaint, all of which defendants deny, the same were the result of and caused by an altercation or fight perpetrated and commenced by the plaintiffs against the individual or individuals whom they claim assaulted them, and that such individual or individuals used no more force than was reasonably necessary to protect themselves, and each of them, from the unlawful and wrongful assaults made upon them by the plaintiffs.

"Further answering said complaint and by way of a further affirmative defense thereto defendants allege:

"I. That the individual or individuals whom the plaintiffs contend or may contend assaulted them were not the agents, servants or employees of the defendants or any of them, and over whom these defendants had no control whatsoever and for whose acts these defendants were in no wise responsible."

In opposition to the motion to set aside the clerk's default and the judgment, plaintiffs filed the affidavit of Kenneth A. Dunn, Deputy Sheriff of Bannock county, who served the summons and complaint in this action on respondent, Pete Siebrand. Plaintiffs also filed the affidavits of H. J. Swanson and George R. Phillips, which affidavits Judge McDougall certifies were used and considered by him on the hearing of the motion. We quote the pertinent parts of the affidavit of Deputy Sheriff Dunn:

"3. That when affiant served one Pete Siebrand with said summons and complaint in the above described action, said Pete Siebrand became violent, rude, and abusive in both manner and action; that said Pete Siebrand said, 'I am not going to worry about this action, and I'm not going to do anything about it. I have lots of actions like this and they don't mean anything. I run a decent place and if people cannot get along here, then that's their own tough luck.'

"4. Affiant further states that said Pete Siebrand, also upon being served with said Summons and Complaint in the above entitled action further complained to affiant, and said: 'These sheriff's offices are always against us people.'"

From the affidavit of H. J. Swanson it appears:

That Toplis and Harding is an Illinois corporation, organized, among other things "to act as adjusters appraisers, and/or inspectors for insurance, surety, and/or casualty companies and/or insurers and/or underwriters of all kinds, in connection with losses, claims and/or damages of all kinds. * * * to inspect, investigate, appraise, adjust, compromise, and/or settle claims for loss and/or damage to property of all kinds; *to inspect, investigate, appraise, adjust, compromise, and/or settle claims, losses, and/or damages covered* by

insurance or claimed or alleged to be so covered; *to act for or on behalf of any insurance company* or companies or underwriter or underwriters in respect to such said business or businesses or *matter or matters, and/or as agent for others* with respect to such said business or businesses or *matter or matters*". (Emphasis added.) And from the affidavit of George R. Phillips, it appears, among other things, that L. E. Glennon was appointed one of the judges of the Fifth Judicial District of the State of Idaho September 15, 1943; that prior to his appointment L. E. Glennon represented insurance companies whose adjuster was Toplis and Harding, Inc.

We come now directly to a consideration of respondents' motion to vacate the clerk's default and the judgment in question upon the ground the default was entered and the judgment taken against them through their mistake, surprise or excusable neglect." What are the pertinent facts, boiled down?

Respondent P. W. Siebrand states: That for a number of years he had relied on his agent, Toplis and Harding, Inc. (hereinafter referred to as the Company), to look after any suits or other legal matters arising from the business he was operating; that he always, when served with papers of any kind, advised the Company by telegram of the service on him of such papers; that the Company had always promptly and efficiently protected his rights; that promptly on the service of the summons and complaint in the case at bar, and on the same day, he wired the Company advising it suit had been filed "against him and his company" and "advising the names of the plaintiffs;" that "June 29, 1946, he received back a wire requesting him to advise the name of the attorney for the plaintiff and affiant's [Siebrand's] future whereabouts"; that on the same day he sent another telegram to the Company advising it "that the name of the attorney for the plaintiffs was H. J. Swanson, Pocatello, Idaho", and that he "was leaving within the next two days for Twin Falls, Idaho, and could be contacted at that place;" that he "assumed he would be contacted there if anything further was needed"; that by reason of a number of years business relations with the Company he believed "the defense of this matter would be promptly and efficiently handled and that he would await further advice from them".

C. W. Tierney states: That he is the managing agent of the Company (Toplis and Harding, Inc.); that the Company was engaged in the matter of adjusting claims; that it acts as agent "for various persons and companies in the investigation of claims and in defense of litigation arising thereon;" that as such the Company for a number of years had acted as the agent of P. W. Siebrand and Siebrand Bros. Circus; that for more than ten years he had had managerial charge of all business referred to the Company by the respondents; that respondents fully relied upon him and the Company in the matters of business so re-

ferred; that for more than ten years prior to the filing of this action, "all legal business in Southeastern Idaho, and particularly in the above entitled district [Fifth Judicial], which had been entrusted to" the Company, "and which required attention, was referred to L. E. Glennon, Attorney at Law, Pocatello, Idaho;" June 29, 1946, the Company "received a telegram from P. W. Siebrand, advising that he [Siebrand] had been served with summons in a suit by Doyle L. Curtis and Raymond Curtis, seeking damages in the amount of $5,000.00 on claim of assault, and also advising further of Siebrand's future whereabouts, and which telegram conveyed to" the Company "information that the defense was to be promptly undertaken by it for and on behalf of said defendants" (respondents); that July 1, 1946, he wired L. E. Glennon, not knowing he was no longer practicing law, requesting him to "handle the suit of Curtis v. Siebrand Bros. Circus, advising that plaintiffs' counsel was H. J. Swanson, Pocatello, Idaho", and "requested Mr. Glennon to secure local assistance if necessary and investigate and report on the matter;" that he was never advised the telegram was not delivered; that August 2, 1946, he mailed a letter to L. E. Glennon quoting the telegram of July 1, 1946, requesting a report of the investigation at the earliest possible moment; that the letter was never returned; that he never received a reply to either the telegram or letter, but believed both had been delivered;

that "other communications were thereafter addressed to the said L. E. Glennon asking for a report on the status of said case, and on December 26, 1946, affiant [Tierney] addressed a letter to L. E. Glennon, Pocatello, Idaho, touching the above entitled matter, which letter, among other things, contains the following: 'We have written you on several occasions requesting a report on this case. We are beginning to get disturbed about your failure to answer our letters and to wonder whether the matter is receiving proper attention. Please write us at once on this subject'; that December 31, 1946, L. E. Glennon, as District Judge, replied to the Company's letter written December 26, 1946, which reply Tierney quotes in full and from which it appears, in substance, that Judge Glennon by such reply advised the Company that if it would refer to its own records it would find he had advised it a long time before he was no longer in private law practice and that he could not represent it, and that Judge Glennon by such reply further advised the Company judgment had been taken for the sum of $3500 and costs.

Being represented by able and adroit counsel, it must be conceded respondents through such counsel would, of course, make as strong a showing in support of their motion, the actual facts would permit. Hence, it is not only fair but safe to assume that if a copy of the summons and complaint was ever forwarded to the Company by Siebrand either at the time those papers

were served on him, or at any other time, a strong showing to that effect would have been made, because, among other things, without such papers, particularly the complaint, the Company could not act intelligently either in its work of investigating and adjusting the claim for damages referred to it by wire, or procuring counsel to defend the action. Furthermore, inasmuch as Siebrand did not forward either the summons or complaint to the Company, as would commonly be expected, it is passing strange the Company did not wire back requesting that those papers be forwarded to it at once. Instead, Tierney says he wired L. E. Glennon to "handle suit of Curtis v. Siebrand Bros. Circus, advising that plaintiffs' counsel was H. J. Swanson, Pocatello, Idaho", without at once or at any time getting from Siebrand and mailing to Glennon a copy of the complaint, so necessary to any lawyer in demurring to or answering a complaint, which Tierney must have known because of his long experience in looking after Siebrand's and other litigation. Moreover, Tierney, after stating he wired L. E. Glennon July 1, 1946, to "handle the suit of Curtis v. Siebrand Bros. Circus," also states "that other communications were thereafter addressed to the said L. E. Glennon asking for a report on the status of the case," and then he speaks of having addressed a letter to L. E. Glennon December 1, 1946, and that by such letter he told Mr. Glennon (now Judge Glennon) that "We have written you on *several* occasions requesting a report on this case."

While it is most rare, it is a matter of common knowledge, a letter can be mailed and not delivered, but how can one believe that Tierney wrote Glennon on "*several* occasions" (emphasis added) and that none of the letters was ever delivered? In other words, Tierney wants the court to understand and believe that one letter after another (up to "several") was written to Glennon and that not one was delivered, with a single exception, the Glennon letter to Toplis and Harding quoted in the Tierney affidavit. Just what had happened to the usually dependable United States mail service, respondents do not disclose. But this is not the full extent of the blame Tierney found necessary to place on the United States mail service in an attempt to explain what would otherwise have appeared to be another instance of negligence. It will be observed Tierney wrote Judge Glennon December 1, 1946, and that in reply to such letter Judge Glennon, among other things, said: "If you will refer to your own records you will find that I advised you a long time ago that I was no longer in private law practice and that I could not represent you." That, however, did not baffle Tierney; he still had the United States mail service, right at his elbow, as it were, upon which to place the blame, and, notwithstanding the fact it had been rather frequently used in "Circus" emergencies, Tierney, nevertheless, handled the distressing situation in his customary manner, although not in the same phraseology, as follows: "Affiant [Tierney] has searched the files of Toplis

and Harding, but has not been able to find information advising that Mr. Glennon was no longer engaged in the practice of law, and *avers that the transmission of such information miscarried* [United States mail service again, and, of course] and did not come to the attention of Toplis and Harding, Inc., or affiant." (Emphasis added.)

Moreover, Tierney also states, and as above pointed out, he wired Glennon July 1, 1946, requesting him to handle the case against respondents and also, and as above pointed out, he says he believed the telegram had been delivered, and "felt assured that the matter would be properly handled and that no default would occur." But engaging an attorney to represent respondents was not something new to Tierney. He had performed that important service for respondents *many* times before, as appears from the affidavit of respondent Siebrand. And, further, in that connection, here is what the respondent's counsel say about that matter: "Let us consider respondents' position under the theory of the above cases [cited by respondents in support of the contention one need not personally engage an attorney]. Mr. Siebrand certainly thought he had engaged an attorney 'through another'. He did it quickly and promptly. He had handled such business this way [by wiring Tierney of actions commenced against respondents] *many* times before." (Emphasis added.) Therefore, Tierney, in turn, must have *many* times before had full responsibility placed upon him by respondents of engaging counsel to defend litigation referred to him by respondents. And in the performance of that duty, Tierney, of course, must have frequently used the telephone. And, further, it will at once be conceded Mr. Tierney could have ascertained definitely, in only a few minutes, whether his telegram to Glennon had, or had not, been delivered, by phoning the telegraph office from which his telegram had been sent. And it will also be conceded, if Tierney had taken a few minutes time to phone and ascertain definitely whether such an all important and vital matter as his telegram to Glennon had, or had not, been delivered, that would, itself, have avoided all the consequences which followed, as well as the necessity for casting all blame upon the telegraph and United States mail service. Furthermore, if the frequent "communications" claimed to have been sent by Toplis and Harding to Glennon had actually been sent, it is fair to assume copies thereof, being both pertinent and material, would have been included in the showing made by respondents to vacate and set aside the judgment. It is noteworthy that where the record shows there actually was a communication, a copy was supplied, as for instance, the letter from Glennon to Toplis and Harding.

On the contention of respondents that the clerk's default as well as the judgment were "taken against the defendants through the mistake, inadvertence, surprise, and excusable neglect of them-

selves and their agents and attorneys", a number of cases are cited. No useful purpose would be served by reviewing them here because they involve different facts and circumstances. Whether an applicant is, or is not, entitled to have a default judgment taken against him vacated and set aside under sec. 5-905, supra, must, of course, depend upon the showing made in support of each application. The rule is that the mistake, inadvertence, or excusable neglect must be such as might be expected on the part of·a reasonably prudent person under the circumstances. Savage v. Stokes, 54 Idaho 109, 116, 28 P.2d 900. And, of course, the burden is upon respondents to bring themselves within the rule. After a careful and painstaking examination and study of the record, we are forced to the conclusion the showing is insufficient. We are not unmindful, however, that the purpose of the statute (sec. 5-905, supra) is to provide that the rights of the parties to lawsuits may be determined upon the merits. But, and nevertheless, and as this court held in Savage v. Stokes, supra, the mistake, inadvertence or excusable neglect must be such as might be expected on the part of a reasonably prudent person under the circumstances. And, moreover, lawsuits must be brought to an end some time and judgments must become final.

We come now to the second ground of respondents' motion to vacate the clerk's default and set aside the judgment taken against them:

(2) "That said judgment was entered after an amendment of the complaint, and particularly the title thereto, without notice" to the defendants.

Sec. 5-905, I.C.A., provides: "The court may, in furtherance of justice and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party * * *. The court may likewise, in its discretion, after notice to the adverse party, allow upon such terms as may be just an amendment to any pleading or proceeding in other particulars, * * * ."

It appears therefrom the legislature intended to provide a court might, in furtherance of justice and on such terms as might be proper, allow a party to amend a pleading by adding or striking out the name of a party, or by correcting a mistake in the name of a party, *without notice to the adverse party*, because immediately following the above quoted provisions of the statute providing for an amendment by "adding or striking out the name of any party, or by correcting a mistake in the name of a party", it is provided the court may, in its discretion, *but after notice to the adverse party*, allow an amendment to a pleading or proceeding *in other particulars*.

Moreover, this court in Kingsbury v. Brown, 60 Idaho 464, 469, 92 P.2d 1053, 1055, 124 A.L.R. 149, construing sec. 5-905, supra, "held that after default the amend-

ing of the complaint as to a mere matter of form, and not in a matter of substance [as in the case at bar], does not open the default", citing cases.

Next comes the third and last ground upon which respondents moved to vacate and set aside the clerk's default and the judgment of the trial court: (3) That "said default and judgment has been taken upon a complaint which fails to state a cause of action" against respondents.

The record discloses appellants alleged: "That on or about the 24th day of June, 1946, in the evening of that day, the plaintiffs, while in attendance at the defendent's Carnival, in Pocatello, Idaho, were set upon by the defendant's agents, and servants, while such agents and servants were acting in the line, course, and scope of their employment, and that the plaintiffs were violently, maliciously, and viciously assaulted with a deadly weapon, to-wit: black jack, and were beaten, struck, kicked about the head, face, chest and arms, so that the plaintiffs were badly bruised and injured, to their damage in the sum of $5,000".

Sec. 5-605, I.C.A., provides the complaint must contain:

"1. * * *

2. A statement of the facts constituting the cause of action, in ordinary and concise language.

3. * * * "

And sec. 5-801, I.C.A., provides: "In the construction of a pleading for the purpose of determining its effect, its allegations must be liberally construed with a view to substantial justice between the parties."

In determining whether the complaint does, or does not, state a cause of action, every reasonable intendment will be made to sustain it. Stone v. Bradshaw, 64 Idaho 152, 158, 128 P.2d 844, and cases therein cited.

Tested by the above provisions of the statute and the construction thereof by this court, we conclude the complaint states a cause of action for the recovery of general damages.

But it is insisted "There is no allegation in the complaint that the respondents directly participated in the alleged assault or thereafter approved it; hence there is nothing stated in the complaint which could support the judgment at least as to punitive damages."

It is true, and as will have been observed, there is no such allegation in the complaint, it being alleged, in that respect, only that appellants "were set upon by the defendants' agents, and servants, while such agents and servants were acting in the line, course, and scope of their employment, and that the plaintiffs were violently, maliciously and viciously assaulted with a deadly weapon, to-wit: a black jack, and were beaten, struck, kicked about the head, face, chest and arms, so that the plaintiffs were badly bruised and injured". From which it appears there is no claim on the

part of appellants that respondents participated in the alleged assault or had previously authorized or subsequently ratified it with knowledge of the facts. It appears there is a conflict of authority on the question. In some jurisdictions it is held: "a principal or master can be held liable for exemplary or punitive damages based upon the wrongful act of his agent or servant only where he participated in the doing of such wrongful act or has previously authorized or subsequently ratified it with full knowledge of the facts. Reasons given for this rule are that since such damages are penal in character, the motive authorizing their infliction will not be imputed by presumption to the principal when the act is committed by an agent or servant, and that since they are awarded not by way of compensation, but as a punishment to the offender and as a warning to others, they can only be awarded against one who has participated in the offense, and the principal therefore cannot be held liable for them merely by reason of wanton, oppressive, or malicious intent on the part of the agent." 15 Am.Juris., sec. 288, p. 730.

On the other hand, there are jurisdictions where "exemplary or punitive damages may be recovered from an employer for acts or omissions of his employee done or omitted to be done in the scope and course of his employment. whenever the employee's acts are of such character as to form the basis for an allowance of exemplary damages, even though these acts

were done without the employee's [employer's] knowledge or authorization and were not subsequently ratified by him, regardless of whether he did or did not know the servant to be incompetent or disqualified for the service in which he was engaged. However, it is said in some cases adopting this view that great caution should be exercised in permitting recovery of exemplary damages for wilful and reckless acts not authorized or approved by the employer." 15 Am.Juris, sec. 290, p. 732.

In Hammond v. McMurray Bros., 49 Idaho 207, 214, 286 P. 603, 605, this court pointed out the conflict of authority on the question under discussion. In that case this court quoted the rule held by one line of authorities that exemplary damages can be allowed in any event, and also the rule held by the other line of authorities that "the principal or master is held liable only where he has authorized, participated in, or ratified the act of the agent or servant," and then pointed out the evidence was "sufficient to show that the master here [Hammond v. McMurray Bros. supra] at least participated in and ratified the unlawful trespass of his servants."

While the question squarely presented to this court in the case at bar was not squarely presented to the court in Hammond v. McMurray Bros., supra, because in the latter case it appears the master (McMurray Bros.) participated in and ratified the unlawful trespass of their servants. For that reason Hammond v. McMurray Bros.,

supra, is not of any particular assistance to us in deciding the question presented here. It is our view the better reasoning supports the rule "a principal or master can be held liable for exemplary or punitive damages based upon the wrongful act of his agent or servant only where he participated in the doing of such wrongful act or has previously authorized or subsequently ratified it with full knowledge of the facts."

 Where punitive damages are not pleaded, as in the case at bar, 49 C.J.S. Judgments, § 19, subd. d, page 49, states the applicable rule thus: "In addition to jurisdiction of the parties and the subject matter, it is necessary to the validity of a judgment that the court should have jurisdiction of the question which its judgment assumes to decide, and jurisdiction to render a judgment for the particular remedy or relief which the judgment undertakes to grant. Where the court does not have such jurisdiction, the judgment is void."

Cases in point are Gile v. Wood, 32 Idaho 752, 754, 188 P. 36; Maloney v. Zipf, 41 Idaho 30, 33, 237 P. 632; Banbury v. Brailsford, 66 Idaho 262, 283, 158 P.2d 826. Hence, the trial court was without jurisdiction to render or enter judgment for punitive damages. Consequently, the judgment therefor is void.

It follows from what has been said, however, that the order of the district court vacating and setting aside the clerk's default as well as the judgment entered in favor of appellants and against respondents August 7, 1946, must be, and such order is, hereby reversed and the cause remanded with directions to that court to reinstate said clerk's default and said judgment, except as to punitive damages. Costs awarded to appellants.

GIVENS, C. J., and MILLER, J., concur.

HYATT, Justice (concurring specially).

In view of the dissent on the question of the reversal of the order appealed from, I deem it advisable to set forth my reasons for concurring in such reversal.

At the outset, I concur with Justice HOLDEN in what he has said with reference to the amendment of the complaint and the reduction of the verdict to omit punitive damages. Where a judgment is void in part, and such void portion can be separated from the balance, the void portion will be vacated and the balance permitted to stand. Backman v. Douglas, 46 Idaho 671, 677, 270 P. 618.

The remaining question is whether or not there is a sufficient showing of mistake, inadvertence, surprise or excusable neglect within the meaning of Section 5-905 I.C.A. to justify the setting aside of the default and the judgment entered thereon.

The application here was heard on affidavits and the files of the case, and while this court has frequently said that the

granting or refusing to grant a motion to vacate a judgment and set aside a default on any of the grounds above mentioned is a matter resting within the sound judicial discretion of the trial judge, it has also consistently held that where the application is made on affidavits and the records and files, and no witnesses are examined before the trial court, this court will make an original examination of the evidence as contained in the record, and will exercise its judgment and discretion the same as if the case were being presented to it for determination in the first instance. See Council Improvement Co. v. Draper, 16 Idaho 541, 102 P. 7, where this court had before it a consideration of the two foregoing principles, and made the latter one controlling. See also Kynaston v. Thorpe, 29 Idaho 302, 305, 158 P. 790, and Cleek v. Virginia Gold M. & M. Co. 63 Idaho 445 at pages 453, 454, 122 P.2d 232, for later consideration and approval.

A litigant moving for relief on the ground of mistake, inadvertence, surprise or excusable neglect must show that he has acted in good faith and exercised due diligence in the prosecution and protection of his rights, such as an ordinarily prudent man would exercise under similar conditions. Council Improvement Co. v. Draper, 16 Idaho 541, 102 P. 7.

In Savage v. Stokes, 54 Idaho 109 at page 116, 28 P.2d 900, this court quoted with approval from Atwood v. Northern Pacific Ry. Co. 37 Idaho 554, 217 P. 600, as follows [28 P.2d 902]: "Under C. S., § 6726, the court may, *upon timely application,* relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, or excusable neglect. This court has held that the 'mistake, inadvertence, or excusable neglect' contemplated by the statute *is such as might be expected on the part of a reasonably prudent person under the circumstances, and that the statute does not excuse utter indifference and inattention to business."*

The California courts under the California statute (Section 473, Deering C. C. P.) reading as follows: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect", have announced the same rule laid down in the Idaho cases just cited in this language:

"To warrant relief under section 473. a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances. The inadvertence contemplated by the statute does not mean mere inadvertence in the abstract. If it is wholly inexcusable *it does not justify relief.* Freeman on Judgments, 5th Ed. Vol. 1, p. 482; Shearman v. Jorgenson, 106 Cal. 483, 485, 39 P. 863. *It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take*

*timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment.* Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied. Freeman, 483, 5th Ed. Courts neither act as guardians for incompetent parties nor for those who are grossly careless of their own affairs. All must be governed by the rules in force, universally applied according to the showing made. Gillingham v. Lawrence, 11 Cal.App. 231, 232, 104 P. 584. The law frowns upon setting aside default judgments resulting from inexcusable neglect of the complainant. The only occasion for the application of section 473 is where a party is unexpectedly placed in a situation to his injury without fault or negligence of his own and against which ordinary prudence could not have guarded. Neither inadvertence nor neglect will warrant judicial relief unless it may reasonably be classified as of the excusable variety upon a sufficient showing. Hughes v. Wright, 64 Cal.App.2d 897, 149 P.2d 392. * * * Diligence is the watchword and to be on the alert is the constant directive. If judgment be entered against a party in his absence before he can be relieved therefrom he must show that it was the result of a mistake or inadvertence which reasonable care could not have avoided, a surprise which reasonable precaution could not have prevented, or a neglect which reasonable prudence could not have anticipated." (Emphasis added.) Elms v. Elms, 72 Cal.App.2d 508, 164 P.2d 936 at page 939.

" * * * The condition or situation which section 473 of the Code of Civil Procedure seeks to remedy is one in which a party to a cause is unexpectedly placed, to his injury without any fault or negligence of his own which ordinary prudence could not have guarded against. *It is not every inadvertence or negligence that warrants judicial relief, but only such inadvertence or negligence as may reasonably be characterized as excusable.* * * * While section 473 of the Code of Civil Procedure is remedial, should be liberally construed and applied to the end that one who has a meritorious defense may be given an opportunity to present it, nevertheless, the policy of the courts is to relieve parties from their defaults only when a proper showing its made warranting such relief." (Emphasis added.) Hughes v. Wright, 64 Cal.App.2d 897, 149 P.2d 392 at page 395.

Taking respondent's showing at face value, the same is in my opinion insufficient when tested by the principles laid down in the foregoing Idaho and California cases. The question of neglect of an attorney at law is not involved, since no attorney was ever retained. Toplis and Harding, Inc., with its office in Chicago, was and had been for many years respondent's agent in the handling of law suits

and claims against him. He turned all such matters over to them. Respondent cannot be excused by leaving the arrangements for the defense of the case in the hands of an agent. The acts of the agent in this case must be imputed to the principal, the respondent.

"A party is ordinarily chargeable with the act or neglect of his agent and should therefore be entitled to relief for the latter's neglect or mistake only where if it were his own, it would be deemed excusable." Freeman on Judgments, 5th Ed., Vol. 1, Sec. 247, p. 494. See also Kynaston v. Thorpe, 29 Idaho 302, 305, 158 P. 790.

Summons was served on respondent June 28, 1946, in Bannock County. On June 29 he wired the agent in Chicago, who in turn on July 1st addressed a telegram to L. E. Glennon at Pocatello, requesting the latter to handle the suit and make a report. Mr. Glennon had previously practiced law in Pocatello for many years, and during his practice had acted as attorney in other legal matters sent to him by Toplis and Harding, Inc., as agent for various persons and companies in the defense of litigation arising from claims. Mr. Glennon was appointed to the District Bench on September 15, 1943, and could not have acted as attorney for Toplis and Harding, Inc., after that time. We must assume in the absence of a showing to the contrary that he had handled none of its business for almost three years prior to the time this case arose. The agent did not know that Judge Glennon was on the bench, but assumed without investigation or inquiry that he was still active in practice. There is no showing that this telegram was ever delivered, and from the fact that Judge Glennon answered a December letter hereinafter referred to, it can be assumed that he never received it. The agent had no reply from Judge Glennon, although requesting a report, and made no effort to have the telegram traced or to determine whether it was delivered, but was content to let the matter ride along until August 2, 1946, when it simply mailed a letter to Mr. Glennon at Pocatello quoting the telegram and requesting a report. No reply was received to this letter, and there is no showing it was delivered. Again the agent let the matter drag along, claiming to have sent an occasional letter to Mr. Glennon, but without any word from him in any way, until December 26, 1946, when it again wrote him. This letter was received by Judge Glennon, and he replied on December 31, 1946, stating he had advised Toplis and Harding a long time ago that he was no longer in private law practice, and could not represent them, and that he had examined the court records and found that a default judgment had been entered on August 7, 1946. Upon receipt of this reply, probably January 3, 1947, Toplis and Harding immediately contacted Merrill and Merrill of Pocatello, and retained them on January 4, 1947.

The agent in this case, experienced as it was in the arrangement of the defense of law suits, certainly knew the importance of an appearance in the case. It must have known that it had had no business with Judge Glennon for approximately three years. Under such circumstances, together with the fact that it received no reply to its telegram within a reasonable time after it sent the same, the agent was not justified in assuming that the wire had been delivered, and that the matter was being handled. It did not follow the matter up with such ordinary care and diligence as a man of ordinary prudence usually bestows upon important business matters. Ordinary prudence in a case of this kind requires that a party or his agent make further effort to contact the attorney and confirm his employment in the case.

To uphold vacating the judgment in this case, we must necessarily say it is excusable neglect or inadvertence for a defendant who is personally served with summons to simply wire or write an attorney to appear for him, and then do nothing further than assume his telegram or letter has been delivered and the case is being cared for, even though he never receives a reply thereto. Such a holding by this court would encourage a defendant to rely upon the mail or telegraph for the retention of counsel without doing anything further during the 20 days allowed for an appearance. This is not the attention or diligence that the law contemplates a party to a suit shall give to such an important matter.

The original inattention of the agent to this business is all the more evident when contrasted with the fact that when it learned of the default, approximately four months after entry, it was able to retain counsel in Pocatello from Chicago within 24 hours by use of the telephone.

No case has been called to our attention which is squarely in point on the facts involved here, and as pointed out in the opinion of Justice HOLDEN, each case must rest upon its own particular facts and circumstances, with the burden upon the applicant to bring himself within the statute. It is my opinion that the facts shown by the respondent cannot and do not sufficiently constitute mistake, inadvertence or excusable neglect within the meaning of the statute.

GIVENS, C. J., concurs.

BUDGE, Justice (concurring in part and dissenting in part).

I concur in that part of the majority opinion in which it is held "the trial court was without jurisdiction to render or enter judgment for punitive damages. Consequently, the judgment therefor is void." No punitive damages were alleged in the complaint, other than in the prayer thereof, which is no part of the complaint upon which liability may be bottomed.

I dissent from that part of the majority opinion reversing the trial court's order and judgment setting aside and vacating the default judgment.

Judgments by default are not favored. The granting or refusing to set aside a default judgment rests in the sound, legal discretion of the trial court. Courts listen more readily to appeals from order denying relief from default judgments than from one granting relief, because of the policy of applying remedial statutes readily to permit trial on the merits, and slight abuse of discretion in refusing to set aside such judgments is sufficient to justify reversal of the order. This principle is exemplified by the provisions of sec. 5-905, I.C.A., where the following language is used: " * * * The court may likewise, in its discretion, after notice to the adverse party, * * * allow an answer to be made after the time limited by this Code, and also ·relieve a party * * * from a judgment * * * taken against him through his mistake, inadvertence, surprise or excusable neglect; and whenever, for any reason satisfactory to the court or the judge thereof, the party aggrieved has failed to apply for the relief sought during the term at which such judgment, order or proceeding complained of was taken, the court, or the judge thereof in vacation, may grant the relief upon application made within a reasonable time, not exceeding six months after the adjournment of the term. * * *" Application to vacate and set aside the default judgment in the instant case was taken within six months after the entry of the default judgment. A· default judgment does not become final until the expiration of the time allowed for setting it aside. Brainard v. Coeur d'Alene Antimony Min. Co., 35 Idaho 742, 208 P. 855. The mere reading of the affidavits in opposition to the motion to vacate the default judgment is, in my opinion, sufficient to establish inadvertence and excusable neglect, without taking into consideration the affidavits in support of the motion to vacate the default judgment, which definitely show excusable neglect. However, the affidavits filed on both sides were before the court and received its careful consideration, and sustained its dis- . cretion in vacating the default judgment in order that the case might be tried upon the merits as the statute itself forceably indicates. The statute is so broad and comprehensive that it allows the court, or judge thereof in vacation, to grant orders vacating default judgments. It was clearly the intention of the legislature, even by the amendment to the above statute, to provide that parties should be relieved from default judgments should it appear that attorneys employed be negligent in filing the necessary pleadings within the time provided by statute, thereby expressing a policy incompatible with a contrary view. If there be a doubt, and in this case there certainly is, that doubt should be resolved in favor of the trial court's action and not against it.

I call attention to a limited number of decisions of this court which bear out the views heretofore expressed.

An application to open a default is addressed to the sound, legal discretion of the trial court, and the order of the court will not be reversed on appeal, unless it clearly appears that the court abused its discretion; and in determining the question of discretion, the power of the court should be freely and liberally exercised under the statute, to mold and direct its proceedings, so as to dispose of cases upon their substantial merits. Holland Bank v. Lieuallen, 6 Idaho 127, 53 P. 398; Holzman & Co. v. Henneberry, 11 Idaho 428, 83 P. 497; Western Loan & Savings Co. v. Smith, 12 Idaho 94, 85 P. 1084; Pittock v. Buck, 15 Idaho 47, 96 P. 212; Culver v. Mountain Home Elec. Co., 17 Idaho 669, 107 P. 65; Harr v. Kight, 18 Idaho 53, 108 P. 539; Morbeck v. Bradford-Kennedy Co., 19 Idaho 83, 113 P. 89; Green v. Kandle, 20 Idaho 190, 118 P. 90; Humphreys v. Idaho Gold Mines Co., 21 Idaho 126, 120 P. 823, 40 L.R.A.,N.S., 817; Hamilton v. Hamilton, 21 Idaho 672, 123 P. 630; Sessions v. Walker, 34 Idaho 362, 201 P. 709; Crane v. City of Harrison, 34 Idaho 167, 200 P. 892. Order denying a motion to set aside a default should be sustained if there is any ground for doing so. Weisgerber v. Prescher, 37 Idaho 653, 654, 217 P. 615.

In Richards v. Richards, 24 Idaho 87, 132 P. 576, 578, in the course of the opinion it is said: "A motion like this is addressed to the sound legal discretion of the court, and when that discretion has been brought to bear upon all the facts presented in the motion and has been exercised in the light of the statutes bearing upon the questions encompassed by the motion, *and there is nothing which makes it appear that such discretion has been arbitrarily exercised in disregard of the established rules of law and principles of justice, an appellate court should not and will not disturb the order and judgment of the court that was called upon to exercise the discretion."* (Citing numerous authorities.) (Emphasis added.) And this is true whether the court grants or refuses to grant the motion to set aside the default.

Section 9187, Revised Codes of Montana (1935) on the point here discussed, is substantially the same as sec. 5-905, I.C.A. The Montana supreme court has construed their statute in the following cases, holding to the same rule as this court, and has refused to disturb the action of the trial court in the exercise of its discretion in granting or refusing to grant a motion to set aside a default judgment: Reynolds v. Gladys Belle Oil Co., 75 Mont. 332, 243 P. 576; Madson v. Petrie Tractor & Equipment Co., 106 Mont. 382, 77 P.2d 1038; Davis v. Hubbard, Mont., 179 P.2d 533.

In the case at bar justice would not be defeated upon the sustaining of the judgment of the court below vacating the default judgment and permitting respondents'

answer to remain on file, thereby making up the issues in order that the case might be tried upon its merits. Otherwise, respondents, having a meritorious defense, as they verily believe, are denied their right to defend by the adoption of a rule that, from my investigation, is not supported by the great weight of authority and the better considered cases.

Justice should never be denied. The courts should be open to redress the wrongs and enforce the rights of all who appear before them. Under the provisions of section 18, article 1 of the constitution of this state, as well as by the unwritten dictates of natural justice, the courts are commanded to administer justice without prejudice. Day v. Day, 12 Idaho 556, 86 P. 531, 10 Ann.Cas. 260.

The judgment of the trial court should be affirmed, except as otherwise herein indicated, and the cause remanded for trial.